J7OTALPD

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ALPHA CAPITAL ANSTALT,

4                   Plaintiff,

5            v.                              19 CV 6199 (PGG)

6   SHIFTPIXY, INC.,

7                   Defendant.

8   ------------------------------x
                                            New York, N.Y.
9                                           July 24, 2019
                                            4:15 p.m.
10
    Before:
11
                        HON. PAUL G. GARDEPHE,
12
                                            District Judge
13
                            APPEARANCES
14
    LAW OFFICE OF KENNETH A. ZITTER
15       Attorneys for Plaintiff
    BY:  KENNETH A. ZITTER
16
    KARLINSKY LLC
17       Attorneys for Defendant
    BY:  MARTIN E. KARLINSKY
18

19

20

21

22

23

24

25

1           (Case called)

2           THE COURT:  This is a hearing on Plaintiff's

3   application of a preliminary injunction.  I'm prepared to rule

4   on the application.  However, if there's anything that the

5   lawyers would like to say, I'm happy to hear it.

6           Mr. Zitter, is there anything else you would like to

7   say?

8           MR. ZITTER:  Other than what I have in my papers, no,

9   not really, your Honor.

10          THE COURT:  Okay.  Mr. Karlinsky?

11          MR. KARLINSKY:  Your Honor, I don't want to waste the

12  Court's time.  I have said pretty much everything I have to say

13  in my papers.  I would point out to your Honor that the cases

14  cited by the Plaintiff in their reply brief are simply

15  inapposite to the case at bar.  In fact, if anything, they cut

16  our way.  The cases, for example, concerning measure of

17  damages, they simply are not applicable to this case, and they

18  are not the law anymore in the State of New York, which we put

19  forth pretty clearly, I think, in our opposition brief.

20          And I leave your Honor with only this thought about

21  that:  On delisting and insolvency, which are two of the

22  grounds that Plaintiff has urged for irreparable harm, the

23  actual and imminent -- excuse me, that harm must be, under the

24  applicable authorities, actual and imminent, insolvency must be

25  likely imminent.  That's a very difficult standard to satisfy,

1   your Honor, and I think that it hasn't been satisfied here,

2   your Honor, with one exception.  We have indicated that we

3   would like the Court's leave to file the current financial

4   statement of the company which was filed with the SEC on Monday

5   of this week.  We'll see what happens at the end of this

6   hearing, and if the case proceeds we do ask for leave to file

7   that.

8             THE COURT:  All right.

9             MR. ZITTER:  Your Honor, I will rely on the Court's

10   reading of the cases.

11             THE COURT:  Thank you.

12             This is a breach of contract action.  (Complaint,

13   Docket No. 1)  The dispute involves a promissory note and

14   conversion rights provided for in that Note.

15             Plaintiff Alpha Capital Anstalt is an investment

16   entity organized under the law of Lichtenstein.  (Absher

17   Declaration (Docket No. 7-1) paragraph 3)  Defendant Shiftpixy,

18   Inc. is alleged to be a Wyoming corporation with its principal

19   place of business in California.  (Complaint (Docket No. 1)

20   paragraph 2)

21             On March 12, 2019, Plaintiff purchased a Senior

22   Convertible Note, which I will be referring to as the "Note,"

23   from defendant in the amount of $1,266,667, pursuant to a

24   Securities Purchase Agreement.  (Feuerstein Affidavit (Docket

25   No. 4) paragraph 3)  The Note gives Plaintiff the right to

convert any portion of the Note to Defendant's common stock.
(Id. paragraph 4)

On four occasions between May 16, 2019, and June 3,
2019, Plaintiff submitted conversion requests for stock, and
Defendant honored those requests.  (Id. paragraph 5)

In a June 11, 2019 form 8-K filing, Defendant
disclosed that it might be delisted from the NASDAQ.  (Id.
paragraph 9)  The 8-K states that on June 6, 2019, NASDAQ
informed Defendant that its stock price had fallen below the
exchange's minimum requirements of $1 per share and $35 million
in market value.  The 8-K further states that (1) the
"notification of non-compliance has no immediate effect on the
listing or trading of [Defendant's] common stock on the
NASDAQ"; and (2) Defendant has until December 3rd, 2019 to meet
NASDAQ's minimum requirements for at least 10 consecutive
business days, and thus to return to full compliance.  (Id.)

On June 20, 2019, Plaintiff submitted its fifth
conversion request, asking to convert $310,000 of the Note into
one million shares of Defendant's common stock.  (Id. paragraph
6)  To date, Defendant has not honored that request.  (Id.)

In a June 27, 2019 Form 8-K filing, Defendant
announced that it would no longer honor conversions of any
senior convertible note, including the Note at issue in this
action.  (Id. paragraph 7)  The 8-K states that "the Company
has informed its convertible Note holders that it will cease

1    honoring conversion requests of the 2018 and 2019 Notes forcing

2    a voluntary default of these instruments"  (Id.)

3           In the Note, Defendant agreed that "a breach by it of

4    its obligations hereunder will cause irreparable harm to

5    [Plaintiff] and that the remedy at law for any such breach may

6    be inadequate.  [Defendant] therefore agrees that, in the event

7    of any such breach or threatened breach, the holder shall be

8    entitled to specific performance and/or temporary, preliminary

9    and/or permanent injunctive relief without posting a bond or

10   other security."  (Id. paragraph 8)

11          As to procedural history, the complaint was filed on

12   July 3rd, 2019.  Plaintiff has moved for a preliminary

13   injunction directing Defendant to (1) deliver one million

14   shares of its stock to plaintiff, thereby honoring the June 20,

15   2019 conversion request, and (2) honor all future conversion

16   requests submitted by Plaintiff under the Note.  (Complaint

17   (Docket No. 1) paragraphs 16 to 20)  On July 9, 2019, I issued

18   an order to show cause why a preliminary injunction should not

19   be entered, and I set a hearing for today.  (Docket No. 6)

20          With respect to the legal standards that apply for

21   issuance of a preliminary injunction, a court may issue a

22   preliminary injunction only where "First, the plaintiff has

23   demonstrated that either (a) a likelihood of success on the

24   merits, or (b) sufficiently serious questions going to the

25   merits to make them a fair ground for litigation.  Second, the

1   court may issue the injunction only if the plaintiff has

2   demonstrated that he is likely to suffer irreparable injury in

3   the absence of an injunction.  Third, a Court must consider the

4   balance of hardships between the plaintiff and defendant and

5   issue the injunction only if the balance of hardships tips in

6   the plaintiff's favor.  Finally, the court must ensure that the

7   public interest would not be disserved by the issuance of a

8   preliminary injunction."  <u>Salinger v. Colting</u>, 607 F.3d 68,

9   79-80 (2d Cir. 2010).

10       "The typical preliminary injunction is prohibitory and

11   generally seeks only to maintain the status quo pending a trial

12   on the merits.  A mandatory injunction, in contrast, is said to

13   alter the status quo by demanding some positive act."  <u>Tom</u>

14   <u>Doherty Associates, Inc. v. Saban Entertainment, Inc.</u>, 60 F.3d

15   207, 34 (2d Cir. 1995).  Here, Plaintiff seeks a mandatory

16   injunction.  "This distinction is important because [the Second

17   Circuit has] held that a mandatory injunction should issue only

18   upon a clearing showing that the moving party is entitled to

19   the relief requested, or where extreme or very serious damage

20   will result from a denial of preliminary matter relief."  (<u>Id.</u>)

21       I will now consider whether Plaintiff has made the

22   necessary matter showing as to irreparable harm.

23       "A showing of irreparable harm is the single most

24   important prerequisite for the issuance of a preliminary

25   injunction."  <u>Faiveley Transportation Malmo AB v. Wabtec Corp.</u>,

1    559 F.3d 110, 118 (2d Cir. 2009).  "To satisfy the irreparable

2    harm requirement, Plaintiff must demonstrate that absent a

3    preliminary injunction [it] will suffer an injury that is

4    neither remote nor speculative, but actual and imminent, and

5    one that cannot be remedied if a court waits until the end of

6    trial to resolve the harm."  Grand River Entertainment Six

7    Nations Limited v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007).

8    "Where there is an adequate remedy at law, such as an award of

9    money damages, injunctions are unavailable except in

10   extraordinary circumstances."  Moore v. Consolidated Edison

11   Company of New York, 409 F.3d 4506, 510 (2d Cir. 2005).

12         Let me address the significance of the reference to

13   irreparable harm in the Note.

14         As I said at the outset, in the Note the parties agree

15   that Defendant's "breach [of the Note] will cause irreparable

16   harm to [Plaintiff] and that the remedy at law for any such

17   breach may be inadequate.  [Defendant] therefore agrees that in

18   the event of such breach, [Plaintiff] shall be entitled to

19   [preliminary injunctive] relief."  (Feuerstein Affidavit

20   (Docket No. 4) at paragraph 8)

21         While this provision is relevant to the Court's

22   consideration of whether Plaintiff will suffer irreparable harm

23   in the absence of an injunction, it "does not control the

24   question of whether preliminary injunctive relief is

25   appropriate."  Baker's Aid v. Hussmann Foodservice Co., 830

F.2d 13, 16 (2d. Circuit, 1987).  Rather, such a provision is "merely one factor that must be considered in deciding whether irreparable harm would result if an injunction did not issue." Markovits v. Venture Info Capital, Inc., 129 F.Supp.2d 647, 661 (S.D.N.Y. 2001).

Accordingly, Plaintiff "cannot rely on the contract provision alone to demonstrate irreparable harm." International Creative Management, Inc. v. Abate, 2007 WL 950092, *6 (S.D.N.Y. March 8, 2007).  Indeed, courts in this Circuit frequently deny applications for preliminary injunctions – despite the presence of such contractual provisions – where plaintiffs have not independently demonstrated irreparable harm.  See, e.g., Baker's Aid, 830 F.2d at 16, (denying preliminary injunction where contract contained a similar provision, because plaintiff had not shown irreparable harm); also, International Creative Management, 2007 WL 950092 at *7 (same); Life Techs Corp. v. AB Sciex Ltd., 2011 WL 1419612, at *8, (S.D.N.Y. April 11, 2011) (same).

The Court must therefore go on to consider whether Plaintiff has proffered additional facts, separate from the provision in the Note, demonstrating that it will suffer irreparable harm in the absence of an injunction.

Plaintiff argues that it has no adequate remedy at law because its damages will be difficult to prove.  According to Plaintiff, because Defendant's stock price has fluctuated since

J7OTALPD

Plaintiff's purchase of the Note, "it will be extremely
difficult to prove when [Plaintiff] would have sold the common
stock it did not receive from [Defendant]."  (Plaintiff's Brief
(Docket No. 5) page 12)

        This argument is not persuasive.  It is a "fundamental
principle that damages for breach of contract should put the
plaintiff in the same economic position he would have been in
had the defendant fulfilled the contract."  Lucente v.
International Business Machines Corp., 310 F.3d, 243, 262 (2d
Cir. 2002) (stating that "New York's damages rules is precisely
the same when the breach of contract is non-delivery of shares
of stock").

        "Where the breach involves the deprivation of an item,
such as a stock, with a determinable market value, the market
value at the time of the breach is the measure of damages."
Sharma v. Skaarup Ship Management Corp., 916 F.2d 820, 825 (2d
Cir. 1990).  Courts have therefore rejected the contention that
in order to calculate damages it would be necessary to
speculate when and if a Plaintiff would sell its stock.  See,
e.g., Laurus Master Fund Ltd. v. Valcom, Inc., 2002 WL 432686,
at *3 (S.D.N.Y. March 19, 2002) ("If we were to find
irreparable harm based on this argument alone then every case
involving a contract to convert stock would amount to per se
irreparable harm.").

        That is a quote from LG Capital Funding, LLC v. Vape

1   Holdings, Inc., 2016 WL 3129185, at *4, (E.D.N.Y. June 2nd,

2   2016).

3        Accordingly, the argument that money damages are not

4   adequate in cases involving a breach of a contractual provision

5   to provide stock is not persuasive.

6        Plaintiff also argues, however, that it faces

7   irreparable harm because Defendant is insolvent and money

8   damages will not be collectible at the conclusion of the case.

9   (Plaintiff's brief (Docket No. 5) at pages 13 and 14)

10       Although the general rule is that a monetary injury

11   does not constitute irreparable harm, there is an exception in

12   "situations involving obligations owed by insolvents."

13   Brenntag International Chemicals Inc. v. Bank of India, 175

14   F.3d 245, 250 (2d Cir. 1999).  "Before a court will grant

15   relief under this exception, however, the plaintiff must show

16   that that the risk of insolvency is likely and imminent."  LG

17   Capital Funding, 2016 WL 3129185, at *4.

18        "The equity test of insolvency equates insolvency with

19   a lack of liquid funds or the inability to pay one's debts in

20   the ordinary course of business as the debts mature."  See,

21   Investors Protection Corp. v. Global Arena Capital Corp., 164

22   F.Supp. 3d 531, 537 (S.D.N.Y. 2016).  "The moving party carries

23   a heavy burden in demonstrating current or imminent insolvency

24   at the preliminary injunction stage, and courts in this Circuit

25   have 'denied applications for a preliminary injunction even in

the face of evidence that a defendant was in a very weak financial condition.'"  Coastal Investors Partners LLC v. DSG Global, Inc., 2017 WL 3605502, at *3 (S.D.N.Y. July 31, 2017) (quoting Union Capital LLC v. Vape Holdings, Inc., 2016 WL 8813991, at *3 (S.D.N.Y. March 9, 2016); LG Capital Funding, LLC v. PositiveID Corp., 2017 WL 2556991, at *6 (E.D.N.Y. June 12, 2017); and LG Capital Funding LLC, 2016 WL 3129185, at *4).

Here, Plaintiff points to Defendant's April 15, 2019 form 10-Q filing as evidence that Defendant is insolvent.  The 10-Q states that Defendant's total current assets are about $10.4 million and that its total current liabilities are about $20.9 million.  (10-Q (Docket No. 4-8) at page 3)  In the 10-Q, the Defendant also states that there is "substantial doubt as to its ability to continue as a going concern within one year from the issuance date of the financial statements."  (Id. at 2)

Numerous courts in this Circuit have held, however, that similar evidence is insufficient to demonstrate that a defendant is currently or imminently insolvent. See, e.g., Union Capital LLC, 2016 WL 8813991, at *3, (imminent insolvency not demonstrated where defendant had current assets of $0.7 million, current liabilities of $1 million, and had expressed doubt in 10-Q as to whether it could continue as a going concern); also, Coastal Investment Partners, LLC, 2017 WL 3605502, at *3 (imminent insolvency not demonstrated where

J7OTALPD

Defendant had current assets of $0.3 million, current
liabilities of $8.2 million, and had expressed doubt in 10-Q as
to whether it could continue as a going concern); also, LG
Capital Funding LLC, 2016 WL 3129185, at *4 (imminent
insolvency not shown where defendant had current assets of $0.7
million, current liabilities of $1 million, and had expressed
doubt in 10-Q as to whether it could continue as a going
concern); also, LG Capital Funding LLC, 2017 WL 2556991, at *6
(imminent insolvency not shown where defendant had current
assets of $1.1 million, current liabilities of $11.4 million,
and had expressed doubt about whether it could continue as a
going concern)).

        Moreover, Defendant's SEC filings from earlier this
year indicate that its business is improving.  For the
six-month period ending on February 28, 2019, Defendant brought
in more than $23.7 million in revenue, up from $14.4 million
year over year.  (10-Q (Docket No. 4-8) at 4)  Defendant's
operating loss for that period dropped from $6.1 million in
2018 to $3.5 million in 2019.  (Id.)  While Defendant's current
liabilities dwarf its current assets, the gap between
liabilities and assets appears to be closing.  Current assets
remained at about $10.4 million between August 31, 2018 and
February 28, 2019, but current liabilities dropped from $23.6
million on August 31, 2018, to $20.9 million on February 28,
2019.  (Id. at 3)

J7OTALPD

1    In similar circumstances, where a defendant has

2    continued to generate substantial revenue, courts in this

3    Circuit have rejected arguments that a defendant is imminently

4    insolvent.  See, e.g., Coastal Investors Partners, LLC, 2017 WL

5    3605502, at *3 (defendant not imminently insolvent where it

6    continued to generate revenue); LG Capital Funding, LLC, 2017

7    WL 2556991, at *6 (same); see also, Union Capital LLC, 2016 WL

8    8813991, at *4 (defendant not imminently insolvent where it

9    "anticipates that it will continue to grow revenues and

10   progress towards achieving profitability").

11   I conclude that Plaintiff has merely shown that there

12   is a possibility that Defendant will be insolvent by the

13   conclusion of this action.  "That mere possibility is

14   speculative and cannot satisfy the [Plaintiff's] burden to show

15   that [it] is likely to suffer irreparable harm if equitable

16   relief is denied."  See, Meringolo v. Power2ship, 2003 WL

17   21750009 at *5 (S.D.N.Y. July 28, 2003).  Under these

18   circumstances, the fact that the parties agreed to a

19   contractual provision stating that a breach of the Note would

20   result in irreparable harm is not sufficient to justify a

21   preliminary injunction.  This is particularly true here given

22   that Plaintiff seeks a mandatory injunction, which requires the

23   movant to meet a more stringent standard.

24   Accordingly, Plaintiff's application for a preliminary

25   injunction is denied.

1           While I have denied Plaintiff's application for a

2   preliminary injunction, that is in no way a comment on my

3   evaluation of the Plaintiff's likelihood of success on the

4   merits of its claims.  It seems clear from what I read so far

5   that the Defendant has breached its obligations under the Note.

6   There is a suggestion in the papers that Defendant intends to

7   argue that Plaintiff was manipulating the market for the

8   Defendant's stock and was engaged in short-selling the

9   Defendant's stock.  Plaintiff denies that, and I'm not aware at

10  this point of any evidence that would support such a claim.

11          But suffice it to say that I am willing to entertain

12  an expedited schedule for any discovery that is necessary, as

13  well as motion practice.  Is the Plaintiff requesting any sort

14  of expedited treatment with respect to discovery and motion

15  practice?

16          MR. ZITTER:  Yes, your Honor, we would like to do this

17  as quickly as possible.

18          THE COURT:  All right.  Could you tell me in your view

19  what discovery is necessary, if any?

20          MR. ZITTER:  Off the top of my head, your Honor, I

21  can't think of any discovery that's necessary.

22          THE COURT:  Mr. Karlinsky, what do you say?

23          MR. KARLINSKY:  Well, your Honor, we would need to see

24  the Plaintiff's trading records, for one thing, and we

25  certainly need to take a deposition of the responsible officer

1   who made the decisions with respect to the conversion of shares

2   and the sale of the shares.  And beyond that, Judge, it's hard

3   to say without taking those initial steps.  We don't object to

4   an expedited discovery schedule planning for an early trial on

5   the merits for the consolidation under Rule 65.

6          THE COURT:  What do you say, sir?

7          MR. ZITTER:  Your Honor, I think we could do this in

8   two weeks.

9          THE COURT:  Well, let me do this:  As I said, I'm

10  sympathetic to your application for expedited relief.  What I

11  ask you to do is talk with your adversary, attempt to reach

12  agreement on what might make sense.  If you can reach

13  agreement, let me know and I will likely so order it.  If you

14  can't reach agreement, let me know and I will resolve the

15  issue.  Okay?

16         MR. ZITTER:  Thank you, your Honor.

17         THE COURT:  All right.  Mr. Karlinsky, anything else?

18         MR. KARLINSKY:  Nothing else, your Honor.

19         THE COURT:  All right.  Thank you both.

20         MR. ZITTER:  Thank you, your Honor.

21         THE COURT:  And you'll let me know by Tuesday how you

22  wish to proceed?

23         MR. ZITTER:  Sure.

24         THE COURT:  Okay.

25         MR. KARLINSKY:  Certainly, your Honor.