United States District Court
Southern District of New York
-------------------------------------------------------x

Alpha Capital Anstalt,

                      Plaintiff,                    19 CV 6199 (PGG)

     v.

                                                 <u>Affirmation</u>

Shiftpixy, Inc.,

                      Defendant.

-------------------------------------------------------x

      Nicola Feuerstein hereby affirms under penalties of perjury under the laws of the United States of America:

      1. I am a managing board member and secretary of Plaintiff Alpha Capital Anstalt ("Alpha Capital"). I submit this affirmation in support of Alpha Capital's motion for summary judgment:

           i) directing Defendant Shiftpixy, Inc. ("SFTY") to deliver to Alpha Capital immediately one million shares of its common stock to which Alpha Capital is entitled based upon SFTY's failure to honor Alpha Capital's June 20, 2019 conversion request under the terms of SFTY's Senior Convertible Note which Alpha Capital acquired in March, 2019 (the "Note"); and

ii) in the event the Court is unwilling to compel SFTY to deliver stock, as Alpha Capital respectfully submits it should, then, in the alternative, awarding Alpha Capital damages in the amount of $500,000, the value of the stock which SFTY should have delivered on June 24, 2019, but did not, in response to its conversion request, plus interest; and

iii) ordering SFTY to honor all future conversion requests duly submitted in accordance with the terms of the Note; and

iv) dismissing SFTY's counterclaim.

I have personal knowledge of the matters set forth herein either directly or based upon my review of the documents as hereafter set forth.[1] The underlying facts are undisputed.[2] As hereafter set forth, Alpha Capital, which is a Liechtenstein corporation, is entitled to all of the relief requested.

---

[1] I incorporate herein by reference my Affirmation in Support of Alpha Capital's motion for a preliminary injunction dated July 2, 2019.

[2] Exhibit A attached hereto is the Amended Complaint. Exhibit B is SFTY's Answer With Counterclaim. Exhibit C is Alpha Capital's Reply.

SFTY Is In Default Under The Note

2. The Note[3] permitted Alpha Capital, at its option, to convert all or a portion thereof into SFTY common stock. Such conversions would reduce the amount otherwise owed to Alpha Capital under the Note. Thus Section 3(a) of the Note provides:

> (a) Conversion Right. Subject to the provisions of Section 3(d), at any time or times on or after the Issuance Date, the Holder shall be entitled to convert any portion of the outstanding and unpaid Conversion Amount (as defined below) into validly issued, fully paid and non-assessable shares of Common Stock in accordance with Section 3(c), at the Conversion Rate (as defined below).

3. On May 16, May 29, May 30 and June 3, 2019, Alpha Capital submitted Conversion Notices to convert portions of the Note into stock.[4] SFTY duly honored those Conversion Notices and delivered shares of stock to Alpha Capital in accordance therewith.

4. On June 20, 2019, Alpha Capital submitted another Conversion Notice to convert $310,000 of the principal of the Note into one million shares of SFTY common stock at the applicable conversion rate of $0.31 per share (the "June 20 Conversion Notice").[5] Without

---

[3]The Note is attached as Exhibit D. SFTY's consent to this Court's jurisdiction is set forth in ¶26 thereof. Venue is proper in this Court under 28 U.S.C. §1391(a). The Securities Purchase Agreement pursuant to which Alpha Capital purchased the Note is Exhibit E.

[4]Those Conversion Notices are attached hereto as Exhibit F.

[5]That Conversion Notice is attached hereto as Exhibit G. The conversion price was calculated at the Alternate Conversion Price, as permitted by Section 3(e)(i)(1) of the Note. There is no dispute as to the applicable conversion price or the number of shares to which Alpha Capital is entitled pursuant to the June 20 Conversion Notice.

excuse or justification, and without disputing any aspect of the June 20 Conversion Notice, SFTY has simply refused to honor the conversion request.

5. Indeed, in an 8K filed on June 27, 2019,[6] SFTY stated that it will no longer honor conversions of the Note or any of the other senior convertible notes issued to other investors in March 2019 and in a previous June 2018 Notes offering.[7] In that filing SFTY stated:

> The Company has informed its convertible note holders that it will cease honoring conversion requests of the 2018 Notes and 2019 Notes forcing a voluntary default of these instruments.

SFTY has, therefore, admittedly defaulted on the Note. SFTY simply made a determination that it is better off defaulting on its conversion obligations under the Note than honoring them. Thus SFTY does not contest Alpha Capital's right to obtain the one million shares of stock. SFTY has simply determined not to deliver the stock to Alpha Capital. SFTY has also determined that it will not honor future conversion requests submitted by Alpha Capital under the Note. Alpha Capital, therefore, has established SFTY's breach of the Note by failing to deliver the one million shares and SFTY's anticipatory breach of its ongoing obligation to honor future conversion requests with respect to the $871,666 remaining unpaid principal balance on the Note.[8]

---

[6] The relevant excerpt from that filed document is annexed hereto as Exhibit H.

[7] SFTY issued additional notes to Alpha Capital and others in December 2018 as recompense for SFTY's defaults under the June 2018 Note. The December Note is identical to the earlier June Note except as to the principal amount. The June 2018 Note is attached hereto as Exhibit N.

[8] The First and Second Claims for Relief in the Amended Complaint alleges claims for breach of contract. The Third and Fourth Claims for Relief allege claims for anticipatory breach of contract.

The Court Should Order SFTY To Deliver The Stock

6. Although this Court denied Alpha Capital's preliminary injunction motion finding that Alpha Capital did not establish, at the outset of this case, irreparable harm sufficient to warrant preliminary injunctive relief,[9] Alpha Capital respectfully submits that now, after SFTY has had full opportunity to take discovery, the Court should compel delivery of the stock, rather than award damages. As is set forth in the Memorandum of Law served herewith, the most important component in determining whether or not a permanent injunction should be granted is the Court's discretion, not whether or not Alpha Capital suffered irreparable harm. The Court should exercise that discretion to direct delivery of the stock. That is particularly true in this case because, as hereafter set forth, damages relief is inadequate.

7. Only by directing delivery of the stock, Alpha Capital respectfully submits, will the Court: i) accomplish the fairest resolution of this dispute in accordance with the agreement of the parties;[10] ii) protect Alpha Capital against all the harm it suffered as a result of SFTY's breach of

---

[9] Attached as Exhibit I is the Court's Decision on that motion.

[10] The parties agreed that Alpha Capital would be entitled to injunctive relief to remedy any failure by SFTY to deliver shares upon conversion. Thus ¶18 of the Note provides: "The Company acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Holder and that the remedy at law for any such breach may be inadequate. The Company therefore agrees that, in the event of any such breach or threatened breach, the Holder shall be entitled, in addition to all other available remedies, to specific performance and/or temporary, preliminary and permanent injunctive or other equitable relief from any court of competent jurisdiction in any such case without the necessity of proving actual damages and without posting a bond or other security."

the Note without imposing any corresponding hardship on SFTY; iii) compel SFTY to comply with its agreement to deliver stock upon conversion, without which Alpha Capital would not have invested in SFTY; and iv) protect the public interest and maintain the integrity of the convertible securities market on which companies such as SFTY rely for financing because, based upon their financial circumstances, they cannot obtain financing from banks or other more traditional sources.

8. Alpha Capital would not have invested in SFTY if it had to rely solely on SFTY's credit for repayment. The convertible note structure allowed Alpha Capital to rely upon the market, not SFTY's credit, for repayment. Although SFTY was obligated to repay the Note, the parties all contemplated at the time Alpha Capital made its investment that Alpha Capital would obtain repayment on the Note, and profit on its investment, by converting the Note and selling the stock thereby obtained on the public market. That is the reason the Note has extensive provisions to insure that Alpha Capital would obtain stock and not be relegated to damages remedies against SFTY. If courts will not enforce the obligation to deliver stock, when, as here, it is warranted, then the entire structure of the convertible securities market will be undermined.

9. As is set forth in the Memorandum of Law served herewith, courts should compel public companies such as SFTY to comply with the terms of their publicly issued securities, such as the Note which Alpha Capital holds. Courts should not relegate public securities holders such as Alpha Capital herein, to time consuming and expensive actions for damages which certainly entail a collection risk because of the financial circumstances of the issuer.

10. Although I understand that the Court, in denying the preliminary injunction, found that SFTY's current financial status did not constitute "irreparable harm" because no bankruptcy proceeding was imminent and SFTY's financial condition appeared to be improving (Exhibit I, p. 11-13), in point of fact SFTY is, and all during the time that Alpha Capital held the Note, was bankrupt under any commonly understood definition of the term. SFTY's liabilities substantially exceed its assets and its current liabilities substantially exceed its current assets.[11] Absent future capital investments on acceptable terms, SFTY simply cannot stay in business. SFTY was bankrupt when Alpha Capital made its investment in March 2019.[12] It is still bankrupt.[13] The financial statements set forth substantial doubt about SFTY's ability to remain as a going concern.[14] It is even more troublesome that SFTY on August 13, 2019 filed a Form 8K informing the public that they could not rely upon SFTY's previous financial statements for the quarter ended February 28, 2019.[15] It was to avoid relying on the credit of a bankrupt entity that Alpha Capital insisted, and SFTY agreed, that the Note could be repaid, at Alpha Capital's option, by obtaining stock and thereby relying on the market to recoup its investment.

11. I understand that the Court found that Alpha Capital did not suffer irreparable harm because its damages could be easily calculated. Breach of contract damages, I am informed, are

---

[11] See Exhibit J, SFYT's most recent financial statements filed 7/22/19 as of 5/31/19.

[12] See Exhibit K, SFTY's financial statements as of 2/28/19.

[13] See Exhibit J.

[14] See "going concern warnings" which are part of both Exhibits J and K.

[15] See Exhibit L.

measured by the value of the stock which Alpha Capital did not receive on June 24, 2019, the date SFTY should have delivered the one million shares of stock. In fact, by applying that measure of damages, Alpha Capital respectfully submits, the Court will have deprived Alpha Capital of the right to hold the stock in anticipation of the price rising and from exercising shareholder rights with respect to that stock. In fact, SFTY stock, since June 24, 2019 when it was selling at $0.50 per share, hit a high of $0.73 per share on July 12, 2019.[16] Thus Alpha Capital's damages, Alpha Capital respectfully submits, for SFTY's violation of the Note, cannot be calculated because SFTY's violation of the Note prevented Alpha Capital from participating in that upside, had it decided to hold the stock, without being compelled to invest more money in SFTY, a right for which Alpha Capital bargained and obtained.

12. By not allowing Alpha Capital to obtain stock, and awarding only damages, the Court will be depriving Alpha Capital of important contract rights, for which it specifically negotiated, and to which SFTY agreed. The right to obtain stock gave Alpha Capital the ability to earn returns commensurate with the risk it was taking. Alpha Capital respectfully submits that, under all of the circumstances of this case, it is unfair to, and the Court should not, deprive Alpha Capital of the stock. Alpha Capital respectfully submits that there is no harm to SFTY by being compelled to abide by its agreement to deliver stock. There is substantial harm to Alpha Capital if it does not obtain the stock because there is a substantial risk that it may not collect on any judgment which, in any event, will be time consuming and relatively expensive to enforce. The balancing of any equities, therefore, leans heavily in Alpha Capital's favor.

---

[16]See stock charts attached as Exhibit M.

13. Alpha Capital respectfully submits, therefore, that the Court should exercise its discretion and direct SFTY to deliver the one million shares of stock to Alpha Capital.

In The Alternative, Alpha Capital Is Entitled To Damages $500,000

14. If the Court is unwilling to exercise its discretion to compel delivery of the stock (as Alpha Capital submits it should), then Alpha Capital suffered damages in the amount of $500,000. The Note required SFTY to deliver one million shares of stock to Alpha Capital on June 24, 2019, two trading days after the June 20 Conversion Notice (Note ¶3(c)). As the Court can see from the Bloomberg reports annexed as Exhibit M, SFTY's stock price on June 24, 2019 was $0.50. The bid price for SFTY stock was above $0.50 for the next month (as high as $0.73), with sufficient volume over the next month (almost 8 million shares) for Alpha Capital to have sold all of the stock SFTY should have delivered for at least $0.50 per share (probably more because of the increasing price of SFTY stock during that period). Thus Alpha Capital, at a minimum, is entitled to judgment in the amount of $500,000, plus interest at the default rate of 18% per annum (Note, ¶2(a)) until judgment is entered.

The Court Should Order SFTY To Honor All Future Conversion
Requests Duly Submitted By Alpha Capital Under The Terms of The Note

15. In its order denying preliminary injunctive relief, the Court did not specifically deal with Alpha Capital's request for the Court to order SFTY to honor future conversion requests. There is a remaining unpaid principal balance on the Note in the amount of $871,666. Thus

Alpha Capital has the right, at its option, to submit multiple future conversion requests under the Note to recoup and profit upon its investment in SFTY. If the Court does not order SFTY to honor those future conversion requests, then Alpha Capital will be required to institute a new lawsuit for damages each time SFTY fails to honor a future conversion request. SFTY has made clear that it will not honor future conversion requests.

16. Alpha Capital respectfully submits that being relegated to multiple future damages lawsuits is not an adequate remedy for SFTY's defaults, as set forth in its Memorandum of Law. Alpha Capital will be required to impose upon the Court and its resources multiple times to recover for SFTY's breach of the Note. That, Alpha Capital respectfully submits, is not an adequate remedy. A simple direction to SFTY to comply with its conversion obligations under the Note will solve the problem quickly, easily and fairly and will provide Alpha Capital with the relief to which SFTY agreed Alpha Capital was entitled.

<u>SFTY's Counterclaim Should Be Dismissed</u>

17. On or about June 4, 2018, Alpha Capital purchased from SFTY a Senior Secured Promissory Note in the principal amount of $2,250,000 (the "2018 Note") (Counterclaim ¶7 and Exhibit A thereto[17]). In addition to providing regular conversion rights to Alpha Capital, the 2018 Note required SFTY, commencing the first day of the month after a registration statement

---

[17]The 2018 Note is attached hereto as Exhibit N.

covering the shares underlying the 2018 Note became effective, to make monthly amortization payments.[18] Thus ¶2(e) of the 2018 Note provides:

> e) <u>Amortization</u>. . . . the Company shall redeem this Note, interest, and the Make Whole according to <u>Schedule 2(e)</u> (each, an "Amortization Payment"). Each Amortization Payment shall, at the option of the Company, be made in whole or in part, . . . in Common Stock at a 15% discount to the lowest VWAP[19] during the ten (10) Trading days prior to the Amortization Payment Date (the "Amortization Conversion Rate") . . .

The parties agreed that the amortization payments would be in equal monthly amounts from the commencement date until maturity on September 4, 2019. The registration statement became effective on October 29, 2018. Amortization payments, therefore, were calculated from November 1, 2018 through September 4, 2019.[20] That calculation, annexed as Exhibit O, required SFTY to make amortization payments in an amount just over $200,000 per month. SFTY was clearly aware of its obligation to make amortization payments in that amount.[21]

---

[18] Section 2(e) of the 2018 Note actually provides that the commencement date for amortization payments is the earlier of the date of an effective registration statement or 180 days after the Note was issued. The effectiveness of the registration statement was the earlier time.

[19] VWAP stands for volume weighted average price and is a publicly reported price.

[20] Amortization payments could not be calculated on June 4, 2018, the time when the 2018 Note was issued, because the date when the registration statement would go effective was not then known.

[21] See Exhibit P, emails in which SFTY recognizes that obligation.

18. The 2018 Note provided that Alpha Capital, at its option, could convert the amortization payments into shares of SFTY stock at the Amortization Conversion Rate, calculated at a discount to VWAP, as set forth above. The Amortization Conversion Rate differs from the Conversion Price of $2.49 set forth in ¶4(b) which is otherwise applicable to other conversions.

19. The 2018 Note, in ¶2(e), also permitted Alpha Capital to accelerate monthly up to three amortization payments or defer amortization payments, at its option. Thus ¶2(e) continues:

> Notwithstanding anything to the contrary contained in this Section 2(e), any Holder, at its option , , , shall be entitled to accelerate each Amortization Payment in up to three (3) separate Amortization Payments each month and demand such payments in Common Stock pursuant to the then current Amortization Conversion Rate. In the event that the Holder elects to accelerate an Amortization Payment, such accelerated Amortization Payment shall be effected from the Amortization Payment due. By way of example, if there are six (6) amortization payments remaining in a calendar year in which such remaining amortizations are for the months of July through December, then the first accelerated amortization shall come from December, and the second, by further example, from November. Furthermore, notwithstanding anything to the contrary contained in this Section 2(e), any Holder, at its option and without regard to the actions of any other Holder, shall be entitled to defer each and any Amortization Payment in its sole discretion and for as long as it wishes to defer such Amortization Payment and receive such payments in Common Stock pursuant to the Amortization Conversion Rate, to be calculated when requested and received.

20. If Alpha Capital, therefore, accelerated three months of amortization payments, it could convert, monthly, just over $604,000 of the 2018 Note.[22] Exhibit Q attaches all of the Conversion Notices which Alpha Capital sent to SFTY as amortization conversions under the 2018 Note.

21. As set forth on Exhibit Q, on and after December 26, 2018, Alpha Capital made 17 conversions of amortization payments at a price based upon the Amortization Conversion Rate, calculated at a discount to VWAP, in accordance with the terms of the 2018 Note. Those Conversion Notices attach the publicly reported VWAP for SFTY for the relevant time period and contain calculations of the Amortization Conversion Rate at a discount to the VWAP. Thus the fact that Alpha Capital was using the Amortization Conversion Rate was apparent from the face of the Conversion Notices.[23] In no month did Alpha Capital convert more than $604,000 of the 2018 Note.

22. Upon receiving the December 26, 2018 Conversion Notice, the first Conversion Notice as to which SFTY now claims that it delivered too many shares, SFTY inquired of Alpha Capital why the conversions were not being done at the $2.49 Conversion Price. Thus in an email

---

[22]In accordance with ¶2(e), amortization conversions were deducted from the amortization payments otherwise due at the end of the 2018 Note.

[23]See Exhibit Q which attaches all of the Conversion Notices under the 2018 Note as to which SFTY complains, with a summary chart. Those Conversion Notices were all amortization conversions. Those Conversion Notices also attach the publicly reported VWAP and a handwritten calculation showing the discount to VWAP for SFTY stock which established the appropriate price for all those amortization conversions.

dated December 27, 2018, Mark Absher, SFTY's counsel, inquired of Alpha Capital as follows (Exhibit R):

> We are just wondering why the investor is claiming a right to a VWAP discount on conversion as opposed to price of $2.49/share, given the following language of the note: [quoting ¶4(b) which sets forth the regular conversion price]. I note that the Maturity Date is September 4, 2019. Can you explain?

Ari Kluger, who is an officer of LH Financial Services, Inc., which is Alpha Capital's service agent in New York, immediately responded that the conversion was an amortization conversion which was based, in accordance with the terms of the Note, upon a discount to VWAP. Thus Kluger responds (Exhibit R):

> The investor has monthly amortization payments which is priced based off of the vwap provision. The investor has the right defer each monthly amortization and then can choose to accelerate up to 3 monthly amortization payments every month. these conversions for both alpha and osher[24] are accelerated amortization payments

Absher responded (Exhibit R):

> Thank you for your clarification. That's helpful.[25]

---

[24]Osher, which is not a party to this action, was another entity holding the 2018 Notes.

[25]The apparent time discrepancies in the emails result from the fact that Ari Kluger was in New York and Mark Absher was in California where there is a three hour time difference. The emails record the time the recipient received it. Kluger received Absher's emails at 2:38 and 2:47 New York time. Absher received Kluger's email at 11:43 California time which is 2:43 New York time. Thus the emails are sequential.

23. SFTY thereafter, from December 2018 through May 2019, delivered stock on 17 different occasions pursuant to all Alpha Capital's amortization payment conversions at a 15% discount to VWAP. Thus SFTY was fully aware of the price Alpha Capital was using for the amortization conversions and understood that the $2.49 conversion price was not applicable. Prior to the commencement of this lawsuit, SFTY never claimed that Alpha Capital used an improper conversion price under the 2018 Note. Thus there is no basis, therefore, for any counterclaim asserting that Alpha Capital received too many shares because the conversions were not based upon a $2.49 Conversion Price. All of the conversions under the 2018 Note were at the appropriate Amortization Conversion Rate.

Alpha Capital is, therefore, entitled to summary judgment dismissing the counterclaim.

Wherefore, I respectfully request that the Court: i) direct SFTY to deliver immediately to Alpha Capital one million shares of SFTY common stock; or ii) in the alternative, award judgment in the amount of $500,000 plus interest at 18% per annum from June 24, 2019 until judgment is entered; and iii) order SFTY to honor all future conversion requests duly submitted in accordance with the terms of the Note; and iv) dismiss SFTY's counterclaim.

Dated: September 9, 2019

_____
Nicola Feuerstein