UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALPHA CAPITAL ANSTALT,                          :

       Plaintiff and Counter-Defendant,         :     19 Civ. 6199 (PGG)

       - against -                               :

SHIFTPIXY, INC.,                                :

      Defendant and Counter-Plaintiff.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


KARLINSKY LLC
Martin E. Karlinsky, Esq.
Bonnie H. Walker, Esq.
103 Mountain Road
Cornwall-on-Hudson, New York 12520
(646) 437-1430
martin.karlinsky@karlinskyllc.com
bonnie.walker@karlinskyllc.com

FITZGERALD YAP KREDITOR LLP
Michael J. Fitzgerald, Esq.
John C. Clough, Esq.
2 Park Plaza, Suite 850
Irvine, California 92614
(949) 788-8900
mfitzgerald@fyklaw.com
jclough@fyklaw.com


*Attorneys for Defendant and Counter-Plaintiff ShiftPixy, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

Preliminary Statement ........................................................................................ 1

Facts ..................................................................................................................... 3

THE LEGAL STANDARD FOR GRANTING PERMANENT
MANDATORY INJUNCTIVE RELIEF .............................................................. 6

THE STANDARD ON SUMMARY JUDGMENT ............................................... 8

ARGUMENT ......................................................................................................... 8

  ALPHA HAS FAILED TO DEMONSTRATE IRREPARABLE
  HARM OR INADEQUACY OF ITS DAMAGES REMEDY ............................ 8

    A.  THE LAW OF THE CASE DOCTRINE PRECLUDES THE GRANT OF A
    PERMANENT INJUNCTION. ...................................................................... 8

    B.  ALPHA HAS, IN ANY EVENT, FAILED TO SATISFY
    THE PREREQUISITES FOR INJUNCTIVE RELIEF. .................................. 10

      1.  The Court's "Discretion" Does Not Confer Independent
      Power to Grant an Injunction. ...................................................... 10

      2.  Alpha's Argument that its Remedy at Law is Inadequate is
      Unavailing. ................................................................................... 13

      3.  Alpha's Argument that the Note's Acknowledgement of
      Irreparable Harm Binds the Court is Without Merit. ................... 15

      4.  Alpha's Argument that its Remedy at Law for Damages is
      Inadequate Because its Damages would be Difficult to Ascertain
      is Unavailing. ............................................................................... 16

CONCLUSION .................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*183 Bronx Deli Grocery Corp. v. United States*, No. 11-cv-1527 (PGG)
(S.D.N.Y. Jun. 14, 2012)..................................................................................................... 8

*Amoco Production Co. v. Gambell*, 480 U. S. 531 (1987) ............................................................ 7

*Boyce v. Soundview Technology Group, Inc.*, 464 F.3d 376 (2d Cir. 2006) ............................... 16

*Ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ........................................................... 6

*Garten v. Hochman*, No. 08-cv-9425 (PGG) (S.D.N.Y. Jun. 15, 2010)........................................ 9

*Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc.*,
962 F.2d 268 (2d Cir. 1992).................................................................................................. 9

*Hermanowski v. Acton Corp.*, 580 F. Supp. 140 (E.D.N.Y. 1983*),
aff'd in relevant part*, 729 F.2d 921 (2d Cir. 1984) ............................................................ 16

*Int'l Creative Mgmt., Inc. v. Abate*, No. 07-cv-1979 (PKL),
2007 WL 950092 (S.D.N.Y. Mar. 28, 2007) ....................................................................... 16

*Learning Annex Holdings, LLC v. Rich Global*, LLC,
No. 09-cv-4432 (SAS) (S.D.N.Y. August 12, 2011) ......................................................... 8, 9

*LG Capital Funding, LLC v. Vape Holdings, Inc.*,
No. 16-cv-2217 (CBA-LB), 2016 WL 3129185
(E.D.N.Y. Jun. 1, 2016) ....................................................................................................... 17

*Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243 (2d Cir. 2002) ............................................... 16

*Markovits v. Venture Info Capital, Inc.*, 129 F.Supp.2d 647
(S.D.N.Y. 2001) .................................................................................................................... 15

*Minard Run Oil Co. v. United States Forest Service*,
894 F.Supp.2d 642 (W.D. Pa. 2012)..................................................................................... 10

*Monowise Ltd. v. OZY Media, Inc.*, No. 17-cv-8028 (JMF)
(S.D.N.Y, May 3, 2018).......................................................................................................... 7

*New York State Nat'l Org. for Women v. Terry*,
886 F.2d 1339 (2d Cir.1989)................................................................................................... 7

*Roach v. Morse*, 440 F.3d 53 (2d Cir. 2006) ................................................................................ 7

*Roberts v. Atl. Recording Corp.*, 892 F. Supp. 83 (S.D.N.Y. 1995 ............................................. 7

*Romero-Barcelo*, 456 U. S., at 320....................................................................................................... 7

*Rondeau v. Mosinee Paper Corp.,*422 U.S. 49, 95 S.Ct. 2069 (1975) ........................................... 7

ii

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) ............................................................ 7

*SEC v. Manor Nursing Centers,* 458 F.2d 1082 (2d Cir. 1982) .................................... 11

*Securities and Exchange Commission v. Barry C. Honig, et al.*,
    1:18-cv-08175 (ER), ................................................................................................. 3

*Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820 (2d Cir. 1990) ........................... 17

*Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 320 N.Y.S.2d 225 (1971) ..................... 17

*The Roman Catholic Archdiocese of New York v. Sebelius*,.
    No. 12 Civ. 2542 (BMC), E.D.N.Y. Dec. 13, 2013. ................................................. 7

*United States v. Narco Freedom, Inc*., 95 F.Supp.3d 747 (S.D.N.Y. 2015) ................. 12

*Vantone Grp. Ltd. Liab. Co. v. Yangpu NGT Indus. Co*.,
    No. 13-CV-7639 (LTS), 2015 WL 1055933
    (S.D.N.Y. Mar. 11, 2015) .......................................................................................... 8

*Weinberger v. Romero-Barcelo*, 456 U. S. 305 (1982) .................................................. 7

*Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 129 S.Ct. 365 (2008) ............... 7

**Statutes**

28 U.S.C. § 1292(a)(1) .................................................................................................... 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALPHA CAPITAL ANSTALT,                              :

        Plaintiff and Counter-Defendant,     :   19 Civ. 6199 (PGG)

        - against -                          :

SHIFTPIXY, INC.,                                    :

        Defendant and Counter-Plaintiff.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### Preliminary Statement

Defendant and counter-plaintiff ShiftPixy, Inc. ("ShiftPixy") submits this memorandum of law in opposition to the motion of plaintiff and counter-defendant Alpha Capital Anstalt ("Alpha") for summary judgment granting it permanent and mandatory injunctive relief, or, in the alternative, damages.[1]

Alpha brought this action stating one claim only and seeking only injunctive relief – an order directing ShiftPixy to issue shares of its stock to Alpha based upon Alpha's conversion demand under a convertible note.  On commencement of the action, Alpha moved for a mandatory preliminary injunction to compel ShiftPixy to issue and deliver those shares.  (Dkt. # 6.)[2]  The Court properly denied such relief.  (Dkt. # 21.)  It found, in essence, that Alpha had

---

[1] ShiftPixy intends to withdraw its pending counterclaim.  The Court need not reach that part of the motion.

[2] Unless otherwise indicated, "Dkt." refers to the docket in this case.

failed to demonstrate it would sustain irreparable harm in the absence of an injunction because the remedy of money damages for breach of a promise to deliver stock was an adequate remedy.

In view of that determination, Alpha amended its complaint as of right to assert a claim for damages in addition to continuing to press its claim for permanent injunctive relief. (Amended Complaint ¶¶ 21-22, Dkt. # 14.)  Importantly, it did not and does not seek either the contractual remedy of specific performance or a declaratory judgment as to the rights of the parties under the convertible note at issue.  Nor has it demonstrated the requirements for such relief.

Alpha now renews its application for injunctive relief by summary judgment. But, with respect to that claim, nothing has changed since the Court denied it such relief in the form of a preliminary injunction.  No new facts are presented in its papers, either as to the measure of Alpha's damages and the adequacy of this remedy or as to ShiftPixy's financial condition, which has been improving since Alpha originally sought injunctive relief.  Alpha presents no new arguments.  The law governing the grant of injunctive relief remains the same. As the Court denied Alpha's motion for preliminary injunctive relief, so too should it deny its motion for summary judgment seeking such relief.  Separate and apart from the merits, the Court's decision on Alpha's motion for a preliminary injunction is "law of the case."  While not all determinations on motions for preliminary injunctive relief are later preclusive, where no new facts are presented, where a court's earlier determination was manifestly correct, and where a party fails to advance any new argument, as here, proper respect for that doctrine compels denial of Alpha's application for injunctive relief.

## Facts[3]

ShiftPixy is a Wyoming corporation with its principal place of business in Irvine, California.  It is an early-stage technology-based specialized staffing and human capital management service provider that offers solutions for large contingent part-time workforce demands, primarily in the restaurant, hospitality and maintenance service trades.  ShiftPixy was a privately held company until 2017, when it made an initial public offering of its shares of common stock at $6 per share.  The stock was and is listed on the NASDAQ exchange.  Until roughly a year ago, ShiftPixy's stock continued to trade near its initial offer price; its 52-week high over the last year was $5.37.  However, its share price has declined, and it has most recently been trading at roughly 50 cents per share.  (Absher Decl. ¶ 2.)

Plaintiff Alpha describes itself as a Lichtenstein Anstalt, an entity organized under Lichtenstein law, usually for investment purposes, with a principal place of business in Vaduz, Liechtenstein.  Its sole business activity appears to be investing.  (Absher Decl. at ¶ 3; *see* Amended Complaint ¶ 1, filed July 25, 2019, Dkt. # 13.)[4]

In June 2018 and in March 2019, ShiftPixy sold senior secured convertible notes to five (5) investors, including Alpha (collectively "Notes," and individually the "June 2018 Note" and the "March 2019 Note.")  (Copies of the Notes are annexed to the Absher Decl. as

---

[3] The relevant facts are fully set forth in the accompanying declaration of Scott W. Absher, the chief executive officer of ShiftPixy, dated October 1, 2019 ("Absher Decl.").

[4] Alpha has been a frequent visitor to this Court.  PACER indicates that it has been a litigant in over fifteen (15) cases in this court since 2002, some of which Alpha cites here to support its present application.  Most recently, in *Securities and Exchange Commission v. Barry C. Honig, et al.*, 1:18-cv-08175 (ER), a Southern District court entered judgment against it for disgorgement of $708,470.07, prejudgment interest in the amount of $149,788.44, and a civil penalty of $50,000, and further restrained and enjoined it from violations of Sections 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and ordered it to engage an independent compliance consultant to review its policies and procedures regarding investments in certain US securities and report to the SEC thereon.

Exhibits A and B, respectively.)  The other investors are Dominion Capital LLC; CVI

Investments, Inc.; MEF I, L.P.; and Osher Capital Partners, LLC.  The investors also received a

December 2018 note (the "December 2018 Note"), with terms identical to the June 2018 Note, to

cure a technical default under that Note.  (Absher Decl. ¶ 4.)

   The economic terms of the Notes were highly favorable to the noteholders.  The

June 2018 Notes were sold at a discount of 10% to the principal amount of the Notes and also

bore a favorable interest rate of 8%.  The March 2019 Notes were sold at a discount exceeding

20% to the principal amount of the Notes (Alpha paid $1,000,000.00 for a note with initial

principal of $1,266,666.67).  The March 2019 Note did not bear interest, but at maturity that note

required payment of 110% of outstanding principal and accrued interest.  This action by Alpha

concerns only the March 2019 Note.

   The Notes as a whole are what is commonly called "toxic financing."  The Notes

are convertible into common shares of ShiftPixy at prices calculated as a substantial discount to

the shares' market price.   (Absher Decl. at ¶ 4.)  Under the Notes the noteholders including

Alpha converted principal amounts due into ShiftPixy shares at such a discount.  For example,

under the June 2018 Note, conversions occurred at a 15% discount to a 10-day VWAP (that is,

the volume weighted average price over the 10 days preceding the conversion demand).  The

noteholders including Alpha then sold converted shares as soon as volume was robust enough to

absorb the sales.  Taken together with the discounted initial price, and with respect to the June

2018 Note, the interest component, the noteholders were able to realize returns on investment

that exceeded 30%.  (Absher Decl. ¶ 6.)

   ShiftPixy honored a series of conversion demands from Alpha and the other

noteholders under the Notes until June 2019.  Each of the noteholders, including Alpha,

apparently immediately sold their converted shares in the open market.[5]  In the spring of 2019, short interest in the stock increased markedly, apparently caused or affected by the noteholders' wholesale bailing themselves out of their conversion stock positions.  (Absher Decl. ¶ 7.)  The conversions and immediate sales of converted stock raised the possibility that ShiftPixy's stock would enter a "death spiral," which threatened to erode totally any value to its stockholders and make it extremely difficult in future to obtain needed financing.  (Absher Decl. ¶ 7.)

The effect of the issuance and sale of the conversion shares because of selling pressure created by the additional stock flooding the market was to depress the market price of ShiftPixy's shares.  From a high of roughly $5.37 in July 2018, that price declined to below $0.50 by July 2019.  In part because ShiftPixy stopped honoring conversion demands in June 2019, it has since rebounded, recovering from a low of $0.376 as of June 12, 2019 to $0.67 as of July 16, 2019 and climbing as high as $0.733 on July 12, 2019.  (The stock closed at $0.47 as of Friday, September 27, 2019.)  There does not appear to be a good explanation for this decline outside of the noteholders' activities and the selling pressure created by those activities.  ShiftPixy has issued a series of reports reflecting a solid business and good operating results, an increasing level of revenues, and declining losses, and to the extent that it has reported news that might be concerning to investors, that news was counterbalanced by its current operations and good future prospects.  (Absher Decl. ¶ 8.)

Integral to its claim for injunctive relief, Alpha argues that ShiftPixy is insolvent, and that because of its insolvency a judgment for money damages would not be paid.  But the

---

[5] Notwithstanding Alpha's argument that its damages are uncertain and difficult to calculate because it would have held shares until the share price rose significantly, there is no evidence before the Court on this summary judgment motion to show that Alpha ever once held converted shares for any appreciable length of time.  To the extent of ShiftPixy's knowledge, Alpha sold every share of conversion stock delivered to it immediately (or as soon as market conditions allowed).

undisputed evidence – ShiftPixy's SEC Form 10-Q for the quarterly period ended May 31, 2019 (Absher Decl. Ex. C) – shows that ShiftPixy's revenues for the three-month reporting period were $14,303,816, an increase of $4,928,324 (or 34%) year to year, and were $38,012,069 for the nine months ended May 31, 2019, an increase of $14,238,198 year over year (or approximately 37%).  Its operating loss for the nine-month period ending May 31, 2019 declined from $7.8 million to $6.6. million year over year.  And while its net loss increased for the same period by roughly $1.5 million, that included a *non-cash charge* of $3.8 million (to account for an inducement loss attributable to an excessive number of shares delivered as a result of incorrect conversion requests by the noteholders.)  Backing out the non-cash charge, its net loss for the period was $5.5 million.  In contrast to the portrayal Alpha seeks to draw of a business on the verge of failure, ShiftPixy had cash on hand of $2.931 million on May 31, 2019, and current assets of $13.2 million.   (Absher Decl. at ¶ 9 and Ex. C.)

On  June 20, 2019, Alpha delivered to ShiftPixy a demand to convert $310,000 of the remaining principal of its March 2019 Note into 1,000,000 shares of ShiftPixy's common stock at a conversion price of $0.31.  ShiftPixy elected not to honor this demand.  This action and the instant motion for summary judgment followed.  (Absher Decl. at ¶ 10.)

### THE LEGAL STANDARD FOR GRANTING
### PERMANENT MANDATORY INJUNCTIVE RELIEF

The legal standard by which to evaluate a claim for permanent injunctive relief is almost too settled to require citation.  As Justice Thomas wrote in *Ebay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006):

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to

6

> compensate for that injury; (3) that, considering the balance of
> hardships between the plaintiff and defendant, a remedy in equity
> is warranted; and (4) that the public interest would not be disserved
> by a permanent injunction.  *See, e.g., Weinberger v. Romero-
> Barcelo*, 456 U. S. 305, 311-313 (1982); *Amoco Production Co. v.
> Gambell*, 480 U. S. 531, 542 (1987). The decision to grant or deny
> permanent injunctive relief is an act of equitable discretion by the
> district court, reviewable on appeal for abuse of discretion.
> *Romero-Barcelo*, 456 U. S., at 320.

*Ebay*, 547 U.S. at 391.[6]  The sole difference between the showing required for a preliminary

injunction and that required for a permanent injunction is that the movant must *succeed* on the

merits, not just demonstrate a likelihood of such success.  *See Amoco Prod*., 480 U.S. at 546 fn.

12 ("The standard for a preliminary injunction is essentially the same as for a permanent

injunction with the exception that the plaintiff must show a likelihood of success on the merits

rather than actual success.").[7]

      Moreover, "if a party fails to show irreparable harm, a court need not even

address the remaining elements of the test."  *Monowise Ltd. v. OZY Media, Inc*., No. 17-cv-8028

(JMF) (S.D.N.Y, May 3, 2018) at *2 ("Because a showing of irreparable harm is the single most

important prerequisite for the issuance of injunctive relief, the Court need not address the

remaining elements necessary to obtain such relief.") citing and quoting *Roberts v. Atl.

Recording Corp*., 892 F. Supp. 83, 88 (S.D.N.Y. 1995; *Vantone Grp. Ltd. Liab. Co. v. Yangpu

---

[6] *See also Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010); *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006); *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir.1989) ("A permanent injunction is proper only when plaintiff shows 'the absence of an adequate remedy at law and irreparable harm if the relief is not granted'"), citing and quoting *Rondeau v. Mosinee Paper Corp.,*422 U.S. 49, 57, 95 S.Ct. 2069 (1975).

[7] *See also Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 24-32, 129 S.Ct. 365, 376-81 (2008); *The Roman Catholic Archdiocese of New York v. Sebelius*,. No. 12 Civ. 2542 (BMC), E.D.N.Y. Dec. 13, 2013 at *38-39.

*Continued on Next Page*

7

*NGT Indus. Co.*, No. 13-CV-7639 (LTS), 2015 WL 1055933, at *4 (S.D.N.Y. Mar. 11, 2015) (same).[8]

## THE STANDARD ON SUMMARY JUDGMENT

The legal standard on a Rule 56 motion for summary judgment is equally well-established.  This Court articulated the standard in *183 Bronx Deli Grocery Corp. v. United States*, No. 11-cv-1527 (PGG) (S.D.N.Y. Jun. 14, 2012), and presumably in other cases.  It would serve no purpose to restate it here.

## ARGUMENT

## ALPHA HAS FAILED TO DEMONSTRATE IRREPARABLE HARM OR INADEQUACY OF ITS DAMAGES REMEDY

### A.  THE LAW OF THE CASE DOCTRINE PRECLUDES THE GRANT OF A PERMANENT INJUNCTION.

Alpha failed on its motion for a preliminary injunction to demonstrate either that it had sustained an injury that was irreparable or that a remedy at law for contract breach would not be adequate to redress its injury.  That legal conclusion is law of the case.  The doctrine precludes re-litigation of this issue now.

The parameters of the doctrine are well known.  "'The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Learning Annex Holdings, LLC v. Rich Global*, LLC, No. 09-cv-4432 (SAS) (S.D.N.Y. August 12, 2011), at *4, fn. 6, quoting *DiLaura v. Power Auth. Of State of N.Y.*, 982 F.2d 73, 76 (2d Cir. 1992), quoting *Liona Corp. v. PCH*

---

[8] At several points in its brief, Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment ("Plf. Mem.") at 6-7, 10-11, Alpha argues that the historical merger of the law and equity courts somehow means that the Court may ignore governing law and precedent and dispense with the traditional, long-prescribed requirements for the grant of injunctive relief.  Whatever merit its argument may have, it is not the law.

*Assocs. (In Re PCH Assocs.)*, 949 F.2d 585, 592 (2d Cir. 1991).  "'[T]he doctrine is, at best, a discretionary doctrine, which does not constitute a limitation on the court's power but 'merely expresses the general practice of refusing to reopen what has been decided.''"  *Learning Annex,* at *4, fn. 7, quoting *Doctor's Assocs. Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997), quoting *United States v. Martinez*, 987 F.2d 920, 923 (2d Cir. 1993)).  "As on a motion for reconsideration, '[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Learning* Annex, at *4 fn. 8, quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992), quoting 18 C. Wright, A. Miller E. Cooper, *Federal Practice Procedure* § 4478.

We acknowledge that "the law of the case doctrine is not universally applied in connection with preliminary determinations, such as a ruling on a motion for a preliminary injunction."  *Garten v. Hochman*, No. 08-cv-9425 (PGG) (S.D.N.Y. Jun. 15, 2010) at *5 fn. 1, *citing Goodheart Clothing Co. v. Laura Goodman Enterprises, Inc*., 962 F.2d 268, 274 (2d Cir. 1992) ("A preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment.... It would therefore be anomalous at least in most cases, and here, to regard the initial ruling as foreclosing the subsequent, more through consideration of the merits that the preliminary injunction expressly envisions.").[9]

But where, as here, movant has shown no facts different from those before the Court on Alpha's motion for a preliminary injunction, where of course there has been no change

---

[9] An earlier *grant* of a motion for preliminary injunction may not be law of the case as it expressly contemplates re-examination in the context of a permanent injunction because the latter requires actual success on the merits, rather than merely a showing of likelihood of success.

in the law, where the same arguments as presented on the earlier motion are presented now, and

where the Court's earlier ruling (in both this case and the related case (*Dominion Capital LLC v.*

*ShiftPixy, Inc.*, 19-civ-6704 (PGG)) was proper and correct, the doctrine is particularly suited.[10]

The law of the case doctrine here precludes re-litigation of the issue of injunctive relief.  *See*

*Minard Run Oil Co. v. United States Forest Service*, 894 F.Supp.2d 642, 651 (W.D. Pa. 2012)

(determinations on appeal affirming or reversing grant or denial of interlocutory preliminary

injunctive relief are binding as law of the case).

## B. ALPHA HAS, IN ANY EVENT, FAILED TO SATISFY THE PREREQUISITES FOR INJUNCTIVE RELIEF.

### 1. The Court's "Discretion" Does Not Confer Independent Power to Grant an Injunction.

In ruling on Alpha's preliminary injunction motion, the Court found that Alpha

had not demonstrated irreparable harm and possessed an adequate remedy at law in the form of

money damages.  Under a well-established body of law, the Court had no discretion nonetheless

to grant that motion; the Court was bound by precedent and law.

Yet Alpha now argues that the Court *has* discretion that empowers it to grant the

present motion.  Let us dispense first with that argument.  To say a court has "discretion" means

simply that it may exercise its power to accomplish the ends of justice and fairness, in

accordance with law.  It is too axiomatic to require citation to say that discretion standing alone

does not confer power on a court to ignore or disregard the legal requirements for injunctive

relief.  Put another way, only if the requirements are first satisfied may a court exercise

"discretion."

---

[10] Neither Alpha, nor Dominion Capital in the related case, sought reconsideration of this court's order. Neither filed a notice of appeal to the Second Circuit under 28 U.S.C. § 1292(a)(1).

Nonetheless, Alpha cites a plethora of cases that supposedly stand for the proposition that the Court's "discretion" is "the most important factor in determining whether . . . final mandatory injunctive relief should be granted."  Plf. Mem. at 5.  Alpha declares, "in deciding whether to grant injunctive relief, a district court is called upon to assess all these considerations of fairness that have been the traditional concern of equity courts."  *Id*.  Alpha goes on to argue that "there is no hard and fast rule that a party is not entitled to equitable relief if there is a remedy at law, particularly if that remedy is inadequate because, as here, it does not fully compensate Alpha for all the risks that it took and all the damages it suffered as a result of [ShiftPixy's] clear breach of the note."  No case law that Alpha cites nor any other case law stands for these propositions.

For example, in the first-cited in the series of cases that allegedly support its argument, *SEC v. Manor Nursing Centers,* 458 F.2d 1082, 1101 (2d Cir. 1982), cited at Plf. Mem. at 5, the trial court found, after a five-day bench trial, that defendants had violated the antifraud provisions of the securities laws and the prospectus-delivery requirement of the Securities Act of  1933.  The court permanently enjoined certain of the appellant-defendants from further violations of these provisions, and the Second Circuit affirmed.  It stated, "[w]e adhere to our well-established rule and hold that the SEC has demonstrated the necessity for injunctive relief since there is a reasonable likelihood of future violations . . . ."  *Id.*  The part of the opinion Alpha cites pertains to appellants' argument that the entry of a permanent *prohibitory* injunction was not appropriate based on the "balancing of the equities" because of the "resulting harmful impact on [the individual defendants comprised of participating securities lawyers' and participating broker-dealers'] reputations and legitimate business activities."  *Id.* at 1102.  The

court exercised its "discretion" to conclude that public investors needed the protection of an injunction – the "public interest, when in conflict with private interest, is paramount." *Id.*

For starters, the factual context of this case is inapposite to the case before this Court. *Manor Nursing* was an SEC enforcement action that among other things sought to prevent future conduct violative of the federal securities law. Needless to say, SEC enforcement actions are designed to vindicate the public interest in preventing wrongdoers from violating public law. It stands in contrast to this case – which seeks injunctive relief to redress a purely private transaction. And Alpha, needless to say, is not the SEC. The "balancing of the equities" and "fairness" discussion in the Second Circuit opinion has no corollary to the facts presented in this case.[11]

Alpha further argues that its remedy at law is inadequate because to recover the full extent of its damages it would be required to bring a multiplicity of suits. But the harm of

---

[11]  While we wish to avoid burdening the Court, we must reiterate that *all* the cases Alpha cites (at Plf. Mem. 5) for this proposition fail to support it. Alpha cites without discussion *United States v. Narco Freedom, Inc*., 95 F.Supp.3d 747 (S.D.N.Y. 2015). The case was a criminal case in which the court held only that an injunction was necessary to prevent "substantial injury to the United States." It does not stand for the proposition that a court may dispense with finding the settled requisites for injunctive relief to grant an injunction. Similarly, *State NOW v. Terry*, 704 F. Supp. 1247 (S.D.N.Y. 1989), states only that "[p]erhaps the most significant single component in the judicial decision whether to exercise equity jurisdiction . . . is the court's discretion." *Id*. at 1263 fn. 22. But *NOW* was a case brought to vindicate plaintiffs' abortion-related rights under 42 U.S.A. § 1985. The court found that plaintiffs had "no adequate remedy at law for money damages for interference with their right to choose an abortion," (*id*. at 1262), and granted a permanent prohibitory injunction because of a demonstrated threat of future interference with that right, past contempt of the court's preliminary injunctions, and a "real and immediate threat" of continuing violation of a constitutionally protected right. It in no way even suggests that a court need not find the traditional elements of entitlement to equitable relief. Finally, Alpha cites two Delaware Chancery opinions to support its position. However much Alpha argues elsewhere that the Court should enforce the Note as written, it appears willing to ignore its own contract when it suits its convenience, as it neglects to advise the Court that the contract contains a New York choice of law provision. (*See* Absher Decl. Ex. B at 36, ¶ 26). Delaware case law is not applicable to this case.

*Continued on Next Page*

which Alpha complains here is the failure to honor a single conversion demand, a harm which gives rise to a damages claim for the value of the undelivered securities at the time of breach. While it may have had other avenues of relief (such as declaring ShiftPixy in breach and thus in default under the March 2019 Note), Alpha chose to frame its suit in this limited manner. Simply stated, the breach of which Alpha complains gave rise only to a single claim for damages *for that breach*, and plainly such damages are recoverable in this action.[12]

### 2.    Alpha's Argument that its Remedy at Law is Inadequate is Unavailing.

Apparently recognizing that its argument based on "discretion" goes nowhere in proving entitlement to injunctive relief, Alpha argues that ShiftPixy was insolvent when it purchased the March 2019 Note and is insolvent now, and that because of its alleged insolvency a judgment for money damages would not be paid. From this wholly speculative premise, Alpha leaps to the equally speculative conclusion that its remedy at law is inadequate and therefore that its harm is irreparable.[13]

First, ShiftPixy has set forth the key measures of its present financial health above in the factual section of this brief (*supra* at 6). We do not repeat them here but point out only that ShiftPixy's May 31 financial statements are the *only* evidence relevant on this motion because they reflect its most recent reported financial condition. In the related *Dominion* case, this Court has already held those financials do not demonstrate insolvency as required by the

---

[12] Similarly, Alpha stated *only* claims for injunctive relief and for damages arising from that single breach. It elected not to bring a claim for specific performance or for declaratory judgment.

[13] One might question why Alpha was willing to buy a note from an entity it now claims was insolvent. It argues at length that the conversion features of the note were the paramount reason for its purchase because no matter the financial condition of the issuer it could issue a conversion demand, sell ShiftPixy's stock so converted, and thus recoup its investment, but the argument is nonsensical. What if insolvency led to bankruptcy or delisting? There would then no longer be a market for ShiftPixy's stock.

*Continued on Next Page*

case law that accepts insolvency as a proxy for irreparable harm.  *See Dominion*, Dkt. # 21.  (The Court held to the same effect concerning ShiftPixy's February 28, 2019 financial condition on Alpha's motion for a preliminary injunction.)[14]

Against these undisputed facts concerning ShiftPixy's financial condition,  Alpha nonetheless argues that this Court denied its earlier motion for a preliminary injunction "because no bankruptcy proceeding was imminent."  This is incorrect.  The Court denied the motion because, in the context of injunctive relief, Alpha's showing did not satisfy the standard to evaluate insolvency set forth in the applicable case law.  Still, Alpha now contends that ShiftPixy's "liabilities substantially exceed its assets and its current liabilities substantially exceed its current assets" and that ShiftPixy, "during the time Alpha held the Note, was bankrupt under any commonly understood definition of the term."  (Feuerstein Affirmation, dated September 9,  2019 at ¶ 10 ("Feuerstein Aff.").)  Whether or not "any commonly understood definition" of bankruptcy would indicate ShiftPixy is insolvent is not the question before the Court.

Thus, for purposes of injunctive relief, and to evaluate whether a damages remedy would be adequate, the courts look not only to assets and liabilities, but to the simple question whether, based upon its present financial condition taken as a whole, limiting a party to a damages remedy would be an adequate remedy.  Aside from speculation that ShiftPixy would not be able to satisfy a damages award, ShiftPixy's most recent financial statements indicate

---

[14] Similarly, the Court rejected the argument – raised again by Alpha at Plf. Mem. 9 – that the "going concern" qualification that ShiftPixy's financial statements carry necessarily indicated present or future insolvency.  (Dkt. # 11 at 11-12.)  (Contrary to Alpha's characterization, the qualification does *not* state that ShiftPixy "simply cannot stay in business, as [ShiftPixy's] own accountants have attested.")

*Continued on Next Page*

otherwise, as this Court has already found.  Alpha presents no new facts to justify its speculative contentions.[15]

### 3.   Alpha's Argument that the Note's Acknowledgement of Irreparable Harm Binds the Court is Without Merit.

Again, Alpha persists in raising arguments that the Court has already (twice) correctly rejected, both in the present case and in the related action, and that are precluded by the law of the case doctrine.  Alpha does not point to any proof or make any contention (other than one we discuss below) the Court has not already considered in doing so.

Thus, in rejecting the argument earlier, the Court first observed that courts uniformly accept that contracting parties may not bind or control a court by such a contractual recitation.  Instead, as it noted, Alpha here has a duty to demonstrate an independent ground for such harm without regard to the contractual recitation.  (Dkt. # 21 at 7-8.)  "[C]ontractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate*." Baker's Aid v. Hussmann Foodservice Co*., 830 F.2d 13, 16 (2d Cir. 1987).  Such language is instead "merely one factor that must be considered in deciding whether irreparable harm would result if an injunction did not issue." *Markovits v. Venture Info Capital, Inc*., 129 F.Supp.2d 647, 661 (S.D.N.Y. 2001).  A plaintiff "cannot rely on [such a] contract provision alone to demonstrate irreparable harm." *Int'l Creative Mgmt., Inc. v. Abate*, No. 07-cv-1979 (PKL), 2007 WL 950092 (S.D.N.Y. Mar. 28,

---

[15] Alpha appears to argue (*see* Feuerstein Aff. ¶ 10) that ShiftPixy's August 13, 2019 SEC Form 8-K, which contained a description of a retroactive *non-cash charge* to earnings of roughly $3.8 million and thus a caution that prior financial statements that did *not* reflect that non-cash charge could not be relied on, renders ShiftPixy's financial statements unreliable.  To the contrary, that adjustment, compelled by ShiftPixy's auditors and application of accounting principles, renders its current financial statements accurate, and does not alter in any respect ShiftPixy's solvency or cash financial position.

2007) at *16.  Alpha's argument will not suffice standing alone to justify issuance of an injunction.

But Alpha does advance one further argument.  This would appear to be that the Court should substitute the contract acknowledgement for the finding of irreparability required by law because it was *Alpha's expectation* that the contract would be enforced as written.  But nowhere does Alpha answer the question *what if that expectation was wrong*.  And, under the authorities cited*, it was wrong*.  It is axiomatic that parties cannot confer powers on a court that it does not otherwise possess by making a private contract.  The contract acknowledgement may well have formed an (incorrect) expectation on Alpha's part, but that does not excuse (or rather, permit) a departure from settled law.

4.  **Alpha's Argument that its Remedy at Law for Damages is Inadequate Because its Damages would be Difficult to Ascertain is Unavailing.**

Alpha argues that the quantum of its damages is uncertain and difficult to ascertain because, allegedly, it would not have sold the conversion shares but rather held them for appreciation.  As we have pointed out, *supra* at 5 fn. 5, this contention is wholly speculative and belied by the actual fact that Alpha never once held shares obtained from ShiftPixy by conversion, but rather immediately sold them in the market.  It is also contrary to law.

"It is settled Second Circuit law that in a breach of contract case, damages are calculated at the time of the breach."  *Boyce v. Soundview Technology Group, Inc*., 464 F.3d 376, 384 (2d Cir. 2006), citing *Lucente v. Int'l Bus. Machs. Corp*., 310 F.3d 243, 262-63 (2d Cir. 2002); and *Hermanowski v. Acton Corp*., 580 F. Supp. 140, 145 (E.D.N.Y. 1983*), aff'd in relevant part*, 729 F.2d 921 (2d Cir. 1984) (per curiam).  And "[t]he same is true of the concept that 'damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract.'"  *Boyce*, 464 F.3d at 385,

16

quoting *Oscar Gruss Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003).  Damages here would be calculated as of June 24, 2019, the date when the shares would have been delivered.

Under New York law, damages for breach of contract are "determined by the loss sustained or gain prevented at the time and place of breach."  *Simon v. Electrospace Corp*., 28 N.Y.2d 136, 145-46, 320 N.Y.S.2d 225 (1971).  Alpha's "loss sustained" as of June 24, 2019 thus equals the price at which ShiftPixy's shares were then trading less what it actually received, or $0.50 times one million shares less zero, yielding damages of $500,000.  There is no argument that this rule extends to situations where "the breach of contract is nondelivery of shares of stock."  *Id*.; *see also Lucente*, 310 F.3d at 262.  Specifically, "where [a] breach involves the deprivation of an item, such as a stock, with a determinable market value, the market value at the time of the breach is the measure of damages."  *Sharma v. Skaarup Ship Mgmt. Corp*., 916 F.2d 820, 825 (2d Cir. 1990) (explaining that "[m]easuring contract damages by the value of the item at the time of the breach is sensible and takes expected lost future profits into account").

Because of this, in cases involving non-delivery of stock, courts generally reject "the contention that in order to calculate damages  it would be necessary to speculate when and if a plaintiff would sell its stock."  *LG Capital Funding, LLC v. Vape Holdings, Inc*., No. 16-cv-2217 (CBA-LB), 2016 WL 3129185 (E.D.N.Y. Jun. 1, 2016) at *4 (citing *Laurus Master Fund. Ltd. v. Valcom, Inc*., No. 02-CV-1480 (WK), 2002 WL 432686 (S.D.N.Y Mar. 19, 2002) at *3 (emphasizing that if the court were to find irreparable harm based on the purported difficulty of determining when stock would be sold "then every case involving a contract to convert stock would amount to per se irreparable harm")).  Alpha's damages are readily calculable; any uncertainty as to the quantum of such damages is eliminated by settled New York law.

**CONCLUSION**

For the foregoing reasons, the Court should (a) deny Alpha's motion for summary judgment granting it mandatory permanent injunctive relief for failure to satisfy the prerequisites for such relief and because the law of the case doctrine precludes it, and (b) deny Alpha's request that the Court order ShiftPixy to honor all future stock conversion demands for the same reasons.

Dated:  Cornwall-on-Hudson, New York
        October 1, 2019

                              Respectfully submitted,

                              KARLINSKY LLC

                              By: /s/ Martin E. Karlinsky
                                    Martin E. Karlinsky, Esq.
                                    Bonnie H. Walker, Esq.
                              103 Mountain Road
                              Cornwall-on-Hudson, New York 12520
                              (646) 437-1430
                              martin.karlinsky@karlinskyllc.com
                              bonnie.walker@karlinskyllc.com

                              FITZGERALD YAP KREDITOR LLP
                              Michael J. Fitzgerald, Esq.[16]
                              John C. Clough, Esq.
                              2 Park Plaza, Suite 850
                              Irvine, California 92614
                              (949) 788-8900

                              *Attorneys for Defendant and Counter-Plaintiff*
                              *ShiftPixy, Inc.*

---

[16] Messrs. Fitzgerald and Clough filed applications for *pro hac vice* admission on July 31, 2019 which are pending subject to correction.