LAW OFFICES

# KENNETH A. ZITTER

260 MADISON AVENUE
NEW YORK, NEW YORK 10016
(212) 532-8000

November 12, 2019

Magistrate Judge Robert W. Lehrburger
United States Magistrate Judge
United States District Courthouse
500 Pearl Street
New York, New York 10007

Re:    Alpha Capital Anstalt v. Shiftpixy, Inc.
       19 CV 6199 (PGG) (RWL)

Dear Magistrate Judge Lehrburger:

In accordance with Your Honor's Order dated November 12, 2019, enclosed please find a complete copy of Exhibit C to Plaintiff's moving Memorandum of Law.

Respectfully submitted,

Kenneth A. Zitter

KAZ/nr

Enc.

via ECF

1

92AAAALPC                    Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ALPHA CAPITAL ANSTALT,

                    Plaintiff,

            v.                          09 CV 670 (LAK)

ADVANCED CELL TECHNOLOGY,
INC.,

                    Defendant.

------------------------------x
                                        New York, N.Y.
                                        February 10, 2009
                                        3:00 p.m.

Before:

                    HON. LEWIS A. KAPLAN,

                                        District Judge

                    APPEARANCES

KENNETH A. ZITTER
     Attorney for Plaintiff Alpha

BACHNER & ASSOCIATES, P.C.
     Attorneys for Defendant Advanced Cell
BY:  MICHAEL FRED BACHNER

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

EXHIBIT C

```
   92AAAALPC                    Conference
1              (Case called)
2              MR. ZITTER:  Kenneth A. Zitter, 260 Madison Avenue,
3   New York, New York, counsel for plaintiff Alpha Capital
4   Anstalt.
5              MR. BACHNER:  Good afternoon or good morning,
6   actually, your Honor.
7              Michael Bachner.  With me is Kevin O' Brian.  We
8   represent Advanced Cell Technology.
9              THE COURT:  Good morning.
10             Okay.  Does the plaintiff have any more evidence to
11  present?
12             MR. ZITTER:  Well, your Honor, last time we were here
13  you said you wanted to hold a hearing.  I have Mr. Rabinowitz
14  here physically in court.  He is the one who signed the aff --
15  one of the affirmations in support of the order to show cause.
16  I don't think there is any dispute about the facts but if your
17  Honor wants live witness testimony --
18             THE COURT:  I couldn't quite follow the whole
19  sentence.  You said you didn't think there was any dispute
20  about the facts --
21             MR. ZITTER:  Right, about the facts that
22  Mr. Rabinowitz put forth in the affirmation.  So I don't know
23  if it advances the ball to have him testify but he is available
24  to testify if your Honor would prefer live testimony.
25             THE COURT:  I don't have to listen to something that
```

3

92AAAALPC                        Conference

1    I've read already.  So it's really going to be up to
2    Mr. Bachner if he feels he needs to cross-examine
3    Mr. Rabinowitz.
4              MR. BACHNER:  Your Honor, we're satisfied actually
5    that the papers set forth accurately Mr. Rabinowitz's position
6    as well.
7              THE COURT:  OK.  Fine.  Thank you.  So is there any
8    other evidence for the plaintiff?
9              MR. ZITTER:  No, your Honor.
10             THE COURT:  Okay.  Then I'll hear Mr. Bachner's side.
11             MR. BACHNER:  Thank you, your Honor.
12             Your Honor, we're here in front of you today, frankly,
13   we were hoping that we would be in front of you today telling
14   you that this matter had been resolved.  My office through
15   Mr. O'Brien --
16             THE COURT:  You were not alone in that.
17             MR. BACHNER:  I know, your Honor.  And we were working
18   fairly diligently with Mr. Zitter at some really long hours
19   over the course of the weekend.  And, frankly, your Honor, we
20   thought that as of nine o'clock this morning that this was
21   going to be resolved.  A glitch came about, your Honor, in some
22   of the dealings with Mr. Caldwell's other corporate counsel
23   about concerns that they had in connection with the settlement
24   issues.  And we thought it was appropriate, your Honor, even
25   though Mr. Ryan indicates to me that he thinks you may have

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

92AAAALPC                        Conference

1   actually in some way addressed this last time.  And if you did
2   I apologize to the Court and if you have addressed it, your
3   Honor, whatever order your Honor issues we will abide by, of
4   course, and so will the company.
5          Mr. Caldwell, your Honor, frankly, would have been
6   here.  We hoped that this was going to be resolved and he
7   didn't have to incur, the company didn't have to incur the
8   expense of coming down here.  Mr. Caldwell if you want to speak
9   to him about any questions that your Honor may have he is
10  available by phone to do that.
11         THE COURT:  This is not an inquisitorial process.
12  There's been a motion made.  You've put in no papers in
13  opposition.  If you want to put on a witness I'll certainly
14  hear that.  So the ball is in your court.
15         MR. BACHNER:  That's fine, your Honor.  We thought you
16  might have been questions of Mr. Caldwell that we're weren't
17  ready to answer.  We're ready to answer them today.  You had
18  questions for Mr. Ryan.  I don't know if it's necessary.  We
19  didn't mean any disrespect to the Court by not having him here.
20         THE COURT:  I appreciate that.  I had a lot of
21  questions.  I wanted to know whether the financial condition of
22  the company is any better or worse today than it was as of
23  March 31, 2008 when it filed it's last queue.  I wanted to know
24  about the amount of shares authorized issued and outstanding
25  were.

92AAAALPC                    Conference

1     MR. BACHNER:  We have that information, your Honor.
2   We have it through certification by Mr. Caldwell and he is
3   ready to go on the phone and tell it to your Honor.
4          THE COURT:  What do you mean?
5          MR. BACHNER:  As part of what was going to be the
6   original settlement Mr. Caldwell put together a certification
7   by him indicating how many outstanding shares there were.
8   There were five hundred million shares outstanding, your Honor,
9   authorized actually.  And there are six million shares, your
10  Honor, not yet issued.
11         THE COURT:  So you've issued four million nine hundred
12  and 94 million?
13         MR. BACHNER:  Yes, your Honor.  And there's six
14  million shares -- actually, your Honor, there were 493,805,641
15  shares.
16         THE COURT:  493,895 and what?
17         MR. BACHNER:  641, your Honor.
18         THE COURT:  That's what's issued and without standing?
19         MR. BACHNER:  That's correct, your Honor.
20         THE COURT:  So the balance that are authorized but not
21  yet issued is six million, right?
22         MR. BACHNER:  I apologize, your Honor.  I spoke over
23  you.
24         THE COURT:  The authorized but not yet issued are
25  about six point two million?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

92AAAALPC                    Conference

1          MR. BACHNER:  Correct, your Honor.
2          Judge, this was the glitch that put us up and whatever
3     your Honor rules on this we will abide by of course.
4          One of the provisions, and it was brought up in the
5     motion papers, has to do with this giving preference to other
6     debenture holders.  There are other debenture holders who are
7     in the same position.  Although, they haven't come to court yet
8     regarding their situation as well.  On page --
9          MR. ZITTER:  Your Honor, I don't mean to interrupt
10    Mr. Bachner but he is testifying, your Honor.  He is giving
11    basically testimony as to what the facts are.  He doesn't know
12    them.  He is not sworn.  He doesn't have a witness here.
13         THE COURT:  One of the things that I was going to
14    inquire of you, Mr. Zitter, at least to the point that he had
15    gone so far, the shares authorizes issued and outstanding.  Do
16    you have any quarrel with accepting those numbers?
17         MR. ZITTER:  Yes, I do, your Honor.  I have serious
18    quarrel with it.  First of all, we have no basis to know if
19    it's true or false.
20         Second, on Friday immediately after the hearing that
21    we had on that day I sent an e-mail to Mr. Bachner's office
22    saying send me the documentation which shows the shares which
23    were issued which were outstanding and how many are left.  I
24    don't have any documents, your Honor.  I don't know whether it
25    is true or not.  In the course of our settlement negotiations I

7

92AAAALPC                    Conference

1   heard at least four different numbers of how many shares were
2   authorized but as yet unissued.  I have no basis to say.
3   There's no witness here to give testimony about it, your Honor,
4   and I would object.
5          MR. O'BRIEN:  Your Honor, Mr. Zitter did ask for
6   information regarding the outstanding shares.  As part of our
7   settlement negotiations he drafted a certification for
8   Mr. Caldwell to fill out regarding number of shares that are
9   outstanding and the number of shares that had been issued as of
10  February 9 which was the date that he had asked for.  That
11  certification we received late last night while we thought we
12  were still in the process of settling.  I have that with me
13  today, your Honor.  That was certified and notarized by
14  Mr. Caldwell in direct response to Mr. Zitter's question in
15  that regard.
16         THE COURT:  So presumably you want to offer it, right?
17         MR. O'BRIEN:  That's correct, your Honor.
18         THE COURT:  Mark it as Defendant's Exhibit A.
19         MR. BACHNER:  Should we approach?
20         THE COURT:  Yes.  Show it to Mr. Zitter first.
21         (Pause)
22         MR. BACHNER:  Your Honor, just so we're clear, we did
23  offer to show this to Mr. Zitter before court and he said he
24  wouldn't accept it or look at it.  We're not --
25         MR. ZITTER:  I would object to the introduction into
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

92AAAALPC                    Conference

1   evidence, your Honor.  It's pure hearsay.  We've asked for the
2   documents which back it up.  They have not been provided to us
3   and Mr. Caldwell is not in court to be subject to
4   cross-examination.
5           MR. BACHNER:  Your Honor, while we agree he is not
6   physically here, he is available by telephone, your Honor, to
7   be cross-examined and placed under oath.
8           Your Honor, if I might just continue, the position
9   that we found ourselves, that is, the company found themselves
10  in, is that under the provisions of the agreement that we all
11  agree exists, I mean the provision itself, there is a provision
12  which essentially, which does indicate all purchasers have to
13  receive equal treatment and the concern that we had, your
14  Honor, is that by issuing the six million shares --
15          THE COURT:  What provision are you referring to?
16          MR. BACHNER:  It's on page 31 of Exhibit P.  It's
17  paragraph 4.15.  Starts off --
18          THE COURT:  I am trying to read it.
19          MR. BACHNER:  I'm sorry.
20          (Pause)
21          THE COURT:  I've read it.  How does that bear on
22  honoring a right to convert the debenture into stock?
23          MR. BACHNER:  The concern that had come up, your
24  Honor, was that by issuing all of, by giving all of the
25  outstanding remaining shares to Alpha we are, in fact,

92AAAALPC                    Conference

1   violating the terms of the agreement indicating that we are not
2   to be given, that all of the purchasers are to be given equal
3   treatment and that we're not permitted, your Honor, to offer
4   consideration to one purchaser that is not offered to another.
5           THE COURT:  But, Mr. Bachner, you are not reading the
6   same paragraph I am reading if you think it says that.  The
7   first sentence says, no consideration shall be offered or paid
8   to any person for a particular purpose.  That particular
9   purpose is to amend or consent to a waiver or a modification of
10  any transaction documents unless the same consideration is
11  given to others.
12          Now, honoring a debenture holder's contractual right
13  to convert the debenture holder's election, the debentures into
14  common stock does not constitute the payment of any
15  consideration, I think.  But even if it did, it would be for a
16  purpose different than the one that the first sentence of
17  Section 4.15 speaks to, wouldn't it?
18          MR. BACHNER:  Which is waiver or amendment.  Which is
19  amendment or --
20          THE COURT:  Waiver or amendment of the transaction
21  document.
22          MR. BACHNER:  As I understand it, your Honor, the
23  problem that we had with those words was that the amount, the
24  price at which the debentures was going to be converted over
25  was at two cents.  As we understand it, the debenture agreement

92AAAALPC                    Conference
1    was that either it was that I think the lowest price was 15
2    cents.  So we were amending the agreement to give the
3    debentures at a price substantially lower than what was
4    reflected in the agreement.
5            THE COURT:  I don't understand that.
6            MR. BACHNER:  Your Honor, I am going to be very
7    candid.  Mr. O'Brien, if he could address that I would
8    appreciate that.
9            THE COURT:  All right.
10           MR. O'BRIEN:  Your Honor, because as the plaintiffs
11   are alleging the conversion price would be reduced to two cents
12   per share because of other issuances that trigger the -- I'm
13   sorry.  I don't have it in front of me at this moment.  Under
14   the subsequent equities sales provision in both of the
15   debentures at page 13 of Exhibit A the conversion price is
16   being reduced to reflect the subsequent issuance of shares at a
17   price below the conversion price of the debentures and
18   therefore --
19           THE COURT:  I don't understand.  The conversion price
20   of the debentures?
21           MR. O'BRIEN:  The conversion price of the debentures
22   depending on the debenture on the face value is either 35 cents
23   or 15 cents.  The argument that plaintiffs are advancing is
24   that that advance sale issued shares to a third party at two
25   cents per share and thus the subsequent equity sales provision

11

92AAAALPC                    Conference

1  of the debentures is triggered.
2          THE COURT:  And therefore if the company converts at
3  two cents it is doing so pursuant to the expressed terms of the
4  debenture and the shares that are being issued are not
5  consideration for any modification or waiver of any provision
6  of the debenture agreement.  They're being issued in strict
7  conformity of the debenture, right?
8          MR. O'BRIEN:  Yes, your Honor, I understand.
9          THE COURT:  Okay.  So the first sentence here doesn't
10 have anything to do with this and neither does the second
11 sentence I think because there's nothing involved in the
12 conversion of the debentures pursuant to which the company is
13 making any payment of principle on the debentures; isn't that
14 right?
15         MR. BACHNER:  Your Honor, we understand what your
16 Honor is saying, yes.
17         THE COURT:  And I am correct, am I not?
18         MR. BACHNER:  We do not disagree with your Honor's
19 finding.
20         THE COURT:  Okay.  And therefore this Section 4.15 has
21 nothing to do with the subject at hand.  You are simply
22 obliged, as far as I can see the documents, to honor the
23 notices of conversion, right?
24         MR. BACHNER:  We agree your Honor and the concern that
25 we had was without some kind of judicial comment on that we
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

92AAAALPC                    Conference
1   didn't want, even though we frankly tended to agree, there were
2   people that did not on the conversion end, and we agree with
3   your Honor we just did not want the position of having some
4   domino effect coming over.  And our position is that this in
5   fact may not have been a trigger but there were other attorneys
6   for the company --
7           THE COURT:  So when you say this in fact may not be a
8   trigger what is the "this" that you are referring to?
9           MR. BACHNER:  Your Honor, we are in agreement in our
10  initial reading which is why frankly we had proceeded so far in
11  settlement discussions that the reading that your Honor gave
12  was certainly a reading that counsel tended to agree with.
13          The problem is, your Honor, that we had some
14  disagreement and we felt it appropriate that if we were going
15  to issue the shares it be pursuant to a ruling by the Court
16  that we do so.
17          THE COURT:  When you say you had some disagreement,
18  you mean there were other people who didn't agree with you.
19          MR. BACHNER:  Correct.  And we felt, your Honor, that
20  the most important thing is we for reporting requirements,
21  etc., your Honor, to be able to going back to the other
22  debenture holders and say we don't believe we are in violation
23  of this provision.  If the want to litigate it they can
24  litigate it.
25          THE COURT:  I understand that.  So the only remaining
                     SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

92AAAALPC                      Conference

1   question goes to, I believe, goes to the subject of irreparable
2   injury.  What else is to be said on that subject?
3        MR. ZITTER:  Your Honor, may I be heard just briefly
4   on that?  Mr. Rabinowitz is here and his affirmation, but I
5   think two things are important to state.  Number one and
6   Mr. Caldwell told him that the company's on the verge of
7   bankruptcy so that --
8        THE COURT:  This is a recent statement?
9        MR. ZITTER:  Yes, your Honor.  It's in his e-mail.  I
10  think it was a conversation on or about January 13th but he is
11  here to testify about it and that he would not honor a
12  conversion requests.  He would not honor the obligation to
13  reserve shares for the benefit of the debenture holders as they
14  agreed to do with the documents.  It is crystal clear that if
15  all we get here is the money judgment we will never see our
16  money.  There are no assets from which to collect.  The company
17  is on the verge of bankruptcy.  And if all we get and indeed I
18  think -- judgment we will go into bankruptcy.  So there is no
19  way we are going to get paid.  In my mind that's ultimate
20  irreparable harm and the Second Circuit other cases have had to
21  brief that.
22       Even more than that, your Honor, they agreed to do all
23  this stuff.  We are not asking them to do something.  They
24  didn't agree.  They agreed to reserve shares for our benefit.
25  They just ignored that obligation.  Other than a court order

92AAAALPC                    Conference

1   saying can't issue shares to someone else until you reserve the
2   proper amount of shares for us, how can we enforce that?  If
3   all we get is damages which your Honor would in effect be
4   saying is the agreement to reserve shares is simply an
5   agreement without a remedy.  I don't believe that's true.  It
6   is a contract obligation.  We agreed to do it.
7          Your Honor, the case is beside the case which we state
8   states that irreparable injury is present when you can't
9   collect.  Also, it will be difficulty in calculating damages
10  here.  Even assuming we got the stock and went out and sold it.
11         THE COURT:  I understand that.
12         MR. ZITTER:  There is case law which we cited which
13  shows that to be irreparable injury.  And finally, a
14  corporation should be made to adhere to the terms of their
15  publicly held security.  They shouldn't make the people who in
16  invest in the companies and buy public securities chase them
17  and run around.  They should be compelled by the Court to do
18  what they agreed to and I think we established irreparable
19  injury more than sufficiently.
20         THE COURT:  Mr. Bachner, anything else?
21         MR. O'BRIEN:  Your Honor, just on the irreparable
22  injury point to address some of the issues from Friday.  Again,
23  the shares are publicly traded and the -- volume is
24  approximately 14 million shares traded per day to the extent
25  that that helps your Honor's determination.

92AAAALPC                    Conference

1   MR. ZITTER:  That's also testimony by an attorney
2   without any facts, your Honor.
3   THE COURT:  Yes.  Okay.  All right.  I am going to
4   rule on this now.  I have before me a motion for preliminary
5   injunction by the plaintiff Alpha Capital Anstalt against
6   Advanced Cell Technology Inc.  The plaintiff seeks an order
7   directing Alpha Capital Technology Inc. to deliver immediately
8   2.5 million shares of its common stock to Alpha Capital and to
9   honor all future conversion requests duly submitted by Alpha
10  Capital in accordance with the agreements between the parties.
11              To declare that the conversion price of the ACTI
12  secured convertible debentures held by Alpha Capital is two
13  cents per share, subject to further downward adjustment as
14  provided in the agreement between the parties and enjoining and
15  abstaining Advanced Cell Technology additional shares of its
16  common stock to any person or entity other than Alpha Capital
17  and to other holders of Alpha Capital -- excuse me -- of
18  Advanced Cell Technology convertible debentures unless and
19  until Advanced Cell technology is in compliance with its
20  contractual obligation to reserve sufficient shares of common
21  stock or issuance to Alpha Capital and the other holders of
22  Advanced Cell Technology convertible debentures.
23              The parties have devoted the usual amount of attention
24  to the standard that governs the issuance of a preliminary
25  injunction.  I needn't spend much time on it.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

92AAAALPC                    Conference

1    On the issue of the plaintiff's likelihood of success,
2    on the basis of what I have seen and heard so far, the
3    plaintiff is substantially certain to prevail on the merits in
4    all respects.  We are not here talking about a claim as to
5    which there is a fair probability of, or that there are fair
6    issues, fair ground for litigation or indeed a likelihood or
7    clear likelihood of success.  Here, the plaintiff in my view is
8    substantially likely to prevail.  The only argument in fact
9    advanced on behalf of the defendant in opposition to the
10   plaintiff's case was Mr. Bachner's reference to Section 4.15 of
11   the underlying agreement which was the subject of colloquy
12   between me and Mr. Bachner.  Mr. Bachner and I have no
13   disagreement about it.  It clearly does not constitute a
14   defense to the relief sought here.  I understand he was putting
15   forward an argument that somebody else in the constellation of
16   Advanced Cell Technology wanted him to put forward and with
17   respect to that he had do that.  But there is not merit to his
18   argument.  That's not a comment on Mr. Bachner's efficacy, his
19   comment on plain language of Section 4.15.  So this is no
20   defense to the claim.
21       So far as irreparable injury is concerned, I have read
22   with care and interest the decision by my friend and colleague,
23   Judge Holwell of this court, in Mullview Special Finance Inc.
24   v. Pinial Labs Inc.  It is unreported but it was rendered on
25   November 29, 2006.  The docket number is 06 CV 1772.  I agree

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

92AAAALPC                    Conference

1   entirely with everything he said on the subject of irreparable
2   harm.  It is all fully applicable to this case.  It's quite
3   clear that the plaintiff would have no adequate remedy of law
4   in the absence of the preliminary injunction that I am going to
5   grant.  So I will issue the preliminary injunction.
6              Now, I will ask that Mr. Zitter submit to chambers,
7   hopeful by tomorrow, a proposed form of order.  The temporary
8   restraining order remains in effect pending the entry of
9   preliminary injunction and the only other question that I will
10  raise is whether anybody has anything to say on the subject of
11  a bond.
12             MR. ZITTER:  Yes, your Honor.
13             I think that there should not be a bond.  Your Honor
14  knows at the discretionary with the Court the likelihood of
15  there being damages as result of a wrongly granted injunction
16  here, your Honor.  I think are minimal at best.  I think your
17  Honor's decision is correct.  I think we're clearly entitled to
18  the injunction and as I understand it, the bond is simply to
19  protect the defendant in the event the injunction is found --
20  to be granted.  I don't think there's chance of this injunction
21  having to be found is wrongfully granted.
22             THE COURT:  I never think there is a chance when I
23  issue a ruling, but every now and then the Court of Appeals
24  engenders humility.
25             MR. ZITTER:  This is clearly it would have to be an
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

92AAAALPC                    Conference

1   abuse of discretion.  So it's not just, you would have to, I
2   don't see that there is any damage to the defendant which we
3   would have to protect against with a bond, your Honor.  So I
4   would suggest that a bond be waived in this case.
5           MR. BACHNER:  Your Honor, we rely on our paper.
6           THE COURT:  Well, maybe you could remind me since the
7   only paper I got was I think this Caldwell certification.
8           MR. O'BRIEN:  Your Honor, we submitted a memo on, I
9   believe --
10          THE COURT:  A few days ago?
11          MR. O'BRIEN:  On Thursday I believe we ECFed it, your
12  Honor.
13          THE COURT:  Maybe you will remind me.
14          MR. O'BRIEN:  Your Honor, it's our position that a
15  bond is required.
16          THE COURT:  Well, how much for what?
17          MR. O'BRIEN:  For the loss of value of the potential
18  issuance of shares to the extent that the injunction assuming
19  that the injunction is wrongfully issued there are shares, six
20  million shares that could be used by the company at the current
21  market price was 19 cents per share as of the close of
22  yesterday that could be used by the company for further
23  funding.  To the extent that the injunction was wrongfully
24  issued the company would have been deprived of the use of those
25  shares for the entire time period.  I believe the case law on

92AAAALPC                    Conference

1   that is consistent that the loss of value of the property that
2   is enjoined is a valid basis for the bond value.
3           THE COURT:  Well, but even assuming you could raise
4   six million times 19 cents or about a million dollars through a
5   good sale of the shares which I suppose is pretty questionable
6   since the stock has been selling as low as one or two cents, if
7   you try to sell six million shares all at once you probably
8   wouldn't get anything close to 19 cents.  Let's pass over that.
9   You would get the million dollars and you would pay bills you
10  already owe, right?  The company is under water, way under
11  water; isn't that true?
12          MR. O'BRIEN:  I believe the company has significant
13  outstanding obligations, your Honor.
14          THE COURT:  Not to put too fine a point on it.  It's
15  net worth as of March 31, 2008 was minus 28 million.  Is it any
16  better than that today?
17          MR. O'BRIEN:  Your Honor, we intend to have
18  Mr. Caldwell available.  To the extent that question needs to
19  be answered as I stand here I can't answer that question.
20          THE COURT:  You mean you didn't even ask him?
21          MR. O'BRIEN:  I set forth in Mr. Caldwell's papers the
22  share price when it was two cents per share.  Significant
23  issues have occurred since then, particularly, in the last
24  month which has caused the share price to rise.  The company's
25  prospects are improving.  The company is close to becoming once

92AAAALPC                    Conference

1   again a reporting company and in the opinion of Mr. Caldwell as
2   set forth in his affirmation -- excuse me -- in his affidavit
3   with the Court is that the company is on the path to recovery
4   and at two cents per share is hopefully a thing of the past.
5        THE COURT:  Last guy I heard say that was Richard Full
6   the weekend before Lehman Brothers went down.
7        Look, it seems to me that the idea that there would be
8   the -- for a wrongful injunction is essentially speculative.  I
9   think it's conceivable that some additional capital could be
10  raised.  But in the last analysis I don't see that making any
11  material difference here.  Even if they could raise a million
12  bucks by selling six million shares for 20 cents and 19 cents a
13  share, it's just going to another creditor, that's all.  And so
14  I think what I will do is I'll require a bond be posted by next
15  Tuesday at five o'clock in the amount of $75,000.  And the
16  injunction, the TRO remains in effect until then and the
17  preliminary injunction will provide that it's continuation
18  beyond five o'clock next Tuesday will be conditioned on the
19  posting of the $75,000 by then, but it will become effective on
20  issuance.  Okay.  Thank you.
21       MR. ZITTER:  One more request.  I am not sure whether
22  we will do this or not, but in the event the binding company
23  requires collateral will it be acceptable if the company simply
24  deposited the $75,000 in my escrow account and I will hold that
25  in lieu of the bond?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

```
      92AAAALPC                    Conference
 1              THE COURT:  No.  It goes to the Clerk of the Court.
 2              MR. ZITTER:  Generally not, your Honor.  The bonding
 3    company generally issues the preliminary injunction bond.
 4              THE COURT:  I understand that.  But you are saying
 5    that you would like instead of a bond if I understand you
 6    correctly for you to have $75,000 in your escrow account.
 7              MR. ZITTER:  I will hold it in lieu of the bond,
 8    whatever conditions the preliminary injunction bond would be
 9    usable for.
10              THE COURT:  That not acceptable.  Either you produce a
11    bond or you deliver $75,000 to the clerk who will hold it.
12              MR. ZITTER:  That's fine.
13              THE COURT:  That's the way I always do it.  This is
14    not.
15              MR. ZITTER:  Off the record.  Off the record, I've
16    done that before, but so be it.
17              THE COURT:  If your adversary is content to do it that
18    way.
19              MR. BACHNER:  I always tend to agree with the Court in
20    these conditions.
21              Nice to see you again, your Honor.
22              THE COURT:  Likewise.
23                              o o o
24
25
```