UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ALPHA CAPITAL ANSTALT,

                              Plaintiff,

        -against-

SHIFTPIXY, INC.,

                              Defendant.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/22/2019

19 Civ. 6199 (PGG) (RWL)

**REPORT AND RECOMMENDATION
TO HON. PAUL G. GARDEPHE:
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Alpha Capital Anstalt ("Alpha") moves for summary judgment (1) to compel Defendant ShiftPixy, Inc. ("ShiftPixy") to deliver one million shares of its common stock pursuant to the terms of a senior convertible note, or, in the alternative, a damages award of $500,000 (plus interest) for breach of contract; (2) to honor all future conversion requests duly submitted in accordance with the terms of the note; and (3) to dismiss ShiftPixy's counterclaim. ShiftPixy has stated its intention to withdraw its counterclaim, and essentially has conceded its breach of contract.  ShiftPixy opposes, however, injunctive relief requiring it to deliver shares to Alpha. For the reasons that follow, Alpha's motion for summary judgment should be GRANTED IN PART and DENIED IN PART.

1

## Factual and Procedural Background[1]

ShiftPixy is an early-stage technology-based business in the temporary staffing sector.[2]  Its stock is listed on the NASDAQ capital markets exchange, where its shares debuted in 2017 at six dollars per share. (*Id.*) This dispute stems from Alpha's investment in ShiftPixy and ShiftPixy's intentional default on a senior convertible note (together with its related transaction documents, the "Note").[3]

### A.    The Note and ShiftPixy's Default

Alpha purchased the Note on March 12, 2019 for $1,266,667.[4]  The Note furnishes Alpha with the right, at its option, to convert – at a discount – all or any portion of the Note

---

[1] Unless otherwise noted, the facts are drawn from the parties' statements of material fact filed pursuant to Local Rule 56.1 and the evidence cited in those statements.  (*See* Dkt. 32, 36.)  Also unless otherwise noted, the facts as set forth are undisputed.

[2] Declaration of Scott W. Absher in Opposition to Plaintiff's Motion for Summary Judgment, October 1, 2019 (Dkt. 34) ("Absher Decl.") ¶ 2.

[3] Four other investors purchased similar notes.  At least one of those other investors has sued ShiftPixy for breach of its obligations under the Notes.  *See Dominion Capital LLC v. ShiftPixy, Inc.*, No. 19 Civ. 6704 (PGG) (S.D.N.Y.).  The transactions at issue in these cases are a form of investment sometimes referred to as "death spiral" or "toxic" financing in which a lender provides an early-stage company with capital in exchange for debt that can be converted to stock in the company.  The economics can cause the price of the company issuing the stock to plunge to nearly zero when the lender exercises multiple rounds of conversion and sale of the stock on the open market at successively lower prices. *See Crown Bridge Partners, LLC v. Sunstock, Inc.*, No. 18 Civ. 7632, 2019 WL 2498370, at *1 (S.D.N.Y. June 3, 2019) (describing death spiral financing).  As one publisher of financial information explains: "A company that seeks death spiral financing basically has no other option to raise money to survive. Traders who want to short the stock salivate at the prospect that the stock will dive. The only hope for the company to break the death spiral is to improve its operational results." Investopia, https://www.investopedia.com/terms/d/deathspiral.asp (last visited on Nov. 18, 2019).

[4] Plaintiff Alpha Capital Anstalt's Statement Pursuant to Rule 56.1 ("Pl. SOF") (Dkt. 32) ¶ 5.

into ShiftPixy stock. (*Id.* ¶¶ 6, 11.)  Failure by ShiftPixy to honor stock conversion requests is a default under the Note. (*Id.* ¶¶ 9-10.)   The Note further provides that ShiftPixy acknowledges that a breach of its obligations under the Note "will cause irreparable harm to [Alpha]," "that the remedy at law for any such breach may be inadequate," and that "in addition to all other available remedies," Alpha shall be entitled "to specific performance and/or temporary, preliminary and permanent injunctive or other . . . relief." (*Id.* at ¶ 10.)

On May 16, 2019, May 29, 2019, May 30, 2019 and June 3, 2019, Alpha submitted conversion notices to convert portion of the Note into ShiftPixy stock. (*Id.* ¶ 7.)  ShiftPixy honored those requests and delivered the requisite shares. (*Id.* 7.) On June 20, 2019, Alpha submitted another conversion notice, seeking to convert $310,000 of principal of the Note into one million shares of ShiftPixy common stock at the applicable conversion rate of $0.31 per share.  This time, ShiftPixy failed to honor the request. (*Id.* ¶ 8.)

A week later, on June 27, 2019, ShiftPixy filed a statement with the United States Securities and Exchange Commission stating that ShiftPixy will no longer honor conversions of the Note or any other senior convertible notes issued to other investors in 2018 and March 2019. (*Id.* ¶ 9.) ShiftPixy stated in the SEC filing that "it will cease honoring conversion requests of the 2018 Notes and 2019 Notes forcing a voluntary default of these instruments." (*Id.*)

## B.    ShiftPixy's Financial Status

According to ShiftPixy, it stopped honoring conversion requests because Alpha and other investors were selling their converted stock shortly after conversion and depressing the value of the shares from a high of roughly $5.37 in July 2018 down to

3

below $0.50 by July 2019.[5] (Absher Decl. ¶¶ 7-8.) After ShiftPixy halted conversions, its stock price rebounded some, reaching a high of approximately $0.73 on July 12, 2019, but as of September 27, 2019 had fallen to $0.47. (Absher Decl. ¶ 7.)

Alpha purchased the Note at a time when ShiftPixy's liabilities exceeded its assets and its current liabilities exceeded its current assets. (Pl. SOF ¶ 12.)  Notes to ShiftPixy's May 31, 2019 financial statement acknowledge "substantial doubt" about ShiftPixy's ability to remain as a going concern within one year, dependent on whether it can generate profit or obtain additional financing.[6] (*Id.* ¶ 12.)  Alpha's ability to convert the Note into stock at a discount and then sell the stock on the open market, and the ability to enforce that obligation, was important to Alpha, precisely because of its concerns that ShiftPixy could go bankrupt.[7] (*Id.* ¶ 13-14.)

---

[5] The stock price hit a low of $0.376 as of June 12, 2019.  (*Id.* ¶ 8.)

[6] *See also* Response of Defendant to Plaintiff's Fed. R. Civ. P. Rule 56(c) and Local Rule 56.1 Statement (Dkt. 36) ("Def. 56.1 Response") ¶ 12.  Alpha characterizes ShiftPixy as "bankrupt," a term that SiftyPixy disputes "if by 'bankrupt' Alpha Capital means that ShiftPixy is a debtor in a bankruptcy proceeding."  (*Id.*)  Alpha also notes the fact that ShiftPixy filed an SEC statement in August 2019 informing the public that it could not rely on ShiftPixy's previous financial statements for the quarter that ended February 28, 2019.  (Pl. SOF ¶ 16.)  No relevant conclusion can be drawn from that particular fact; the SEC statement does not indicate the reasons why the financial statements were not reliable, and no evidence is presented as to any connection between the admonition and Alpha's financial condition.

[7] ShiftPixy objects to statements about Alpha's intent and concerns as inadmissible parol evidence.  The parol evidence issue is irrelevant, however, because the Court finds no need to interpret terms of the Note, and no party contends any of its terms are ambiguous. The information is relevant to the extent it may illuminate harm that Alpha could incur for which a damages remedy would be inadequate.  That said, the Court provides this information for context more than for anything else.

While expressing concern about ShiftPixy's future, the May 31, 2019 quarterly SEC filing also contains statistics reflecting some improvement.   For example, ShiftPixy's revenue for the three-month period was $14,303,816, an increase of $4,928,324 (or 34%) year to year, and were $38,012,069 for the nine months ended May 31, 2019, an increase of $14,238,198 year over year (or approximately 37%). (Absher Decl. ¶ 9; *Id.*, Ex. C.)  At the same time, ShiftPixy's operating loss for the nine-month period ending May 31, 2019 declined from $7.8 million to $6.6 million year over year.  (*Id.*) And while ShiftPixy's net loss increased for the same period by roughly $1.5 million, that included a non-cash charge of $3.8 million; backing out that charge results in a net loss for the period that declined from $7.8 million to $5.5 million.  (*Id.*) As of May 31, 2019, ShiftPixy had cash on hand of $2.931 million and current assets of $13.2 million. (*Id.*)

Pursuant to the terms of the Note, ShiftPixy was required to deliver the converted stock requested by Alpha on June 24, 2019 (two trading days after the conversion request). (Pl. SOF ¶¶ 23-24.) On that day, ShiftPixy's stock market price was $0.50 per share. (*Id.* ¶ 25.)  Without having the converted shares, Alpha could not sell them and thus could not reap the profit that would come from having had them converted at a discounted price and from a potential future increase in the market price. As of October 4, 2019, the Note had an unpaid principal balance of $871,666. (*Id.* ¶ 20.)

## C.    This Action and Alpha's Motion

Alpha filed this action on July 3, 2019, and that same day moved by order to show cause for a preliminary injunction requiring ShiftPixy to (1) immediately deliver 1,000,000 shares of common stock, and (2) honor all future conversion notices duly submitted according to the terms of the Note. (Dkt. 1, 3.)  The Court denied the motion. (Dkt. 12.)

5

Although the Court found that "it seems clear" that ShiftPixy breached its obligations under the Note, the Court also found that Alpha's claim of irreparable harm was speculative and insufficient to warrant a preliminary injunction. (Transcript July 24, 2019, Dkt. 13 ("Tr.") at 13-14.)

With respect to irreparable harm, the Court first held that the parties' contractual agreement that ShiftPixy's breach of the Note will cause irreparable harm is insufficient alone, and instead merely one factor to consider, in assessing irreparable harm. (*Id.* at 7-8.) The Court then rejected Alpha's argument that it has no adequate remedy at law because its damages will be hard to prove.  The Court cited Second Circuit precedent holding that "[w]here the breach involves the deprivation of an item, such as a stock, with a determinable market value, the market value at the time of breach is the measure of damages." *Id.* at 9 (quoting *Sharma v. Skaarup Ship Management Corp.*, 916 F.2d 820, 825 (2d Cir. 1990)).   The Court also rejected Alpha's argument that it faced imminent irreparable harm because ShiftPixy's financial condition was such that the company was likely to soon be insolvent and therefore unable to pay any damages award.  The Court explained that "numerous courts in this Circuit" have held that evidence similar to that presented by Alpha is "insufficient to demonstrate that a defendant is currently or imminently insolvent." (*Id.* at 11.) The Court also noted ShiftPixy's SEC filings from earlier in the year indicated that its business is improving. (*Id.* at 12.)

On July 30, 2019, Alpha filed its Amended Complaint.[8] (Dkt. 14.) The Amended Complaint, which is the current operative complaint, asserts seven claims:  (I) breach of contract for failure to deliver the common stock shares and seeking an injunction to

---

[8] The following day, the Court ordered expedited discovery. (Dkt. 17.)

require immediate delivery; (II) the same breach of contract but seeking damages; (III) anticipatory breach of the obligation to honor future conversion requests and seeking an order to comply; (IV) the same anticipatory breach but seeking damages; (V) conversion and seeking an injunction; (VI) conversion but seeking damages; and (VII) attorneys' fees in accordance with the Note.  In short, apart from attorneys' fees, Alpha asserts three theories of liability: breach of contract, anticipatory breach, and conversion – and two forms of relief – an injunction requiring delivery of shares and money damages.

On October 4, 2019, Alpha filed the instant motion for summary judgment. (Dkt. 30.) Its moving papers do not specify on which claims for relief its motion is based. Rather, the motion focuses on the relief requested: judgment directing ShiftPixy to immediately deliver one million shares of stock pursuant to Alpha's conversion request and the terms of the Note.  In the alternative, if the Court determines not to grant injunctive relief, Alpha asks for a judgment awarding it $500,000 (plus interest), which is the value of the one million shares on the day they should have been delivered.  Alpha's motion also requests judgment requiring SoftPixy to honor all future duly submitted conversion requests.

The primary issue raised by Alpha's motion, and the only one on which the parties have substantively engaged, is whether Alpha is entitled to affirmative injunctive relief requiring ShiftPixy to honor conversion requests or instead is entitled to only damages. Accordingly, that is the issue on which this opinion focuses.

## Summary Judgment Standard

To obtain summary judgment under Rule 56 of the Federal Rules of Civil Procedure, a movant must show that there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a). A fact is material if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, courts view the evidence in the light most favorable to the non-moving party and draw all factual inferences in the nonmoving party's favor. (*Id.*) However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." (*Id.* at 247-48) (emphasis omitted).

Reliance upon conclusory statements or mere allegations is not sufficient to defeat summary judgment. *Geyer v. Choinski*, 262 F. App'x 318, 318 (2d Cir. 2008). Instead, the non-movant must show "that there is some evidence which would create a genuine issue of material fact." *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). The moving party may demonstrate the absence of a genuine issue of material fact "in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988)).

Under Rule 56, a party asserting that a fact cannot be, or, is genuinely disputed "must support the assertion by" either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Powell v. National Board of Medical Examiners*, 364 F.3d 79, 84 (2d Cir. 2004) (if movant demonstrates absence of genuine issue of material fact, nonmovant bears burden of demonstrating "specific facts showing that there is a genuine issue for trial"). Failing that, summary judgment is appropriate.

## Analysis

### A.   Alpha is Entitled to Summary Judgment On its Breach of Contract Claims

Alpha has established ShiftPixy's breach of contract under New York law for failing to fulfill its obligation to honor the June 20, 2019 conversion request.

The parties agree that New York law applies pursuant to the terms of the Note. (Dkt. 30-5 at 6.)  "Under New York law, the elements of a breach of contract claim include the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." *Wilder v. World of Boxing LLC*, 777 Fed. App'x. 531, 532 (2d Cir. 2019) (summary order) (citing *Harris v. Seward Park Housing Corp.*, 79 A.D.3d 425, 426, 913 N.Y.S.2d 161 (2010)).  The record indisputably establishes each of those elements: the Note is a contract; Alpha submitted its conversion notice as required by the Note, and there is no suggestion that Alpha did not meet its own obligations; ShiftPixy concedes its failure to honor the conversion request; and Alpha has not received the stock.  ShiftPixy admits each of Alpha's statements of material fact as to breach. (Compare Dkt. 32 at ¶¶ 5-6, 8-9 with Dkt. 36 at ¶¶ 5-6, 8-9.)  Indeed, ShiftPixy's opposition

brief does not make any argument even addressing breach of contract.[9]  In short, there is no dispute, just as the Court foretold when at the preliminary injunction hearing it found that ShiftPixy's breach "seems clear." (Tr. at 14.) Accordingly, Alpha is entitled to summary judgment on its claim that ShiftPixy has breached its contractual obligations by failing to deliver one million shares of its stock on June 24, 2019.

Similarly, Alpha is entitled to summary judgment that ShiftPixy is liable for anticipatory breach of its obligation to honor future conversion requests.  "Under the doctrine of anticipatory breach, 'a wrongful repudiation of the contract by one party before the time of performance entitles the non-repudiating party to immediately claim damages for total breach,' and will relieve the non-repudiating party of its obligations of future performance."  *Aetna Casualty and Surety Co. v. Aniero Concrete Company, Inc.*, 404 F.3d 566, 587 (2d Cir. 2005) (citing *American List Corp. v. U.S. News & World Report, Inc.*, 75 N.Y.2d 38, 44, 549 N.E.2d 1161, 1165 (1989) (internal citations omitted)); *see also Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.,* 92 N.Y.2d 458, 462, 705 N.E.2d 656, 659 (1998) ("[W]hen a party repudiates contractual duties prior to the time designated for performance and before all of the consideration has been fulfilled, the repudiation entitles the nonrepudiating party to claim damages for total breach") (internal quotations omitted). ShiftPixy indisputably repudiated its contractual obligations under the Note when it announced that it will "cease" honoring conversion requests under the Note.

---

[9] An opposing party's failure to address a claim on summary judgment may be found to be abandonment.  "Where, as here, a counseled non-moving party submits 'a partial response arguing that summary judgment should be denied as to some claims while not mentioning others,' that response 'may be deemed an abandonment of the unmentioned claims.'"  *Camarda v. Selover,* 673 Fed. App'x. 26, 30 (2d. Cir. 2016) (summary order) (quoting *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014)).

(Pl. SOF ¶ 9.) *See Aetna*, 404 F.3d at 587 ("Repudiation occurs when a party manifests an intent not to perform, either by words or by deeds") (internal citations omitted).[10]

## B.   Alpha Has Not Demonstrated That Injunctive Relief is Warranted

The question presented on this motion is whether Alpha is entitled to mandatory injunctive relief requiring ShiftPixy to deliver one million shares of its stock or whether, instead, Alpha may only recover monetary damages.

Alpha claims, *inter alia*, that damages are not an adequate remedy and that mandatory injunctive relief should be granted to preserve the benefit of what Alpha bargained for, including its rights to be a ShiftPixy shareholder.   Alpha also emphasizes that the parties expressly agreed that ShiftPixy's breach would irreparably harm Alpha and that injunctive relief would be available to it.   The public interest also will be best-served by requiring ShiftyPixy to comply, says Alpha, because the market for convertible securities will be undermined if courts do not enforce provisions to deliver stock.

In opposition, ShiftPixy argues that injunctive relief is available only if a plaintiff has no adequate damages remedy and will incur irreparable harm in the absence of an injunction.   Alpha's damages have a fixed value – the market price for the stock on the day it was supposed to be delivered – thereby providing Alpha with an adequate remedy at law and obviating irreparable harm.   ShiftPixy also argues that the Court previously

---

[10] The parties have not presented any argument about Alpha's claim for conversion.  The Court notes, however, that Alpha cannot establish a claim for conversion because it never actually possessed the stock shares that were never delivered.  *See, e.g.*, *LG Capital Funding, LLC v. CardioGenics Holdings, Inc.*, No. 16 CV 1215, 2018 WL 1521861, at *6 (E.D.N.Y. Feb. 20, 2018), *report and recommendation adopted,* 2018 WL 2057141 (March 8, 2018) ("the Complaint alleges that CGNH failed to deliver any shares and LG never received them. CGNH could not have converted LG's shares if LG never received them or actually possessed them. There was nothing for CGNH to convert.")

found an insufficient showing of irreparable harm at the preliminary injunction stage, and there are no new facts or law to warrant any different outcome now.

### 1. Requirements for Permanent Injunction

A permanent injunction may issue only when the movant demonstrates "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also EMA Financial LLC v. Aim Exploration, Inc.*, No. 18 Civ. 145, 2019 WL 689237, at *12 (S.D.N.Y. Feb. 19, 2019) (quoting and applying *eBay*). "For mandatory injunctions, which 'alter rather than maintain the status quo,' such as the one at issue here, 'the movant must show a 'clear' or 'substantial' likelihood of success' on the merits."[11] *New York Civil Liberties Union v. New York City Transit Authority*, 684 F.2d 286, 294 (2d Cir. 2012) (internal citations omitted). "The decision to grant or deny permanent injunctive relief is within the Court's equitable discretion." *eBay*, 547 U.S. at 391.[12]

---

[11] The higher standard for mandatory injunctions often is encountered in the context of a request for preliminary injunctive relief. The same standard, however, applies when a permanent injunction is under consideration. *New York Civil Liberties Union*, 684 F.2d at 294 ("The requirements for a permanent injunction are essentially the same as for a preliminary injunction, except that the moving party must demonstrate "actual success" on the merits."). Whichever standard is applied, however, the Court in this case arrives at the same conclusion to deny permanent injunctive relief.

[12] ShiftPixy argues that Alpha essentially is seeking specific performance of ShiftPixy's obligation to deliver stock but that Alpha failed to plead specific performance as a cause of action and therefore cannot obtain it here. (Dkt. 35 at 2, 13 n.12.) That is a suspect argument because whether styled as a mandatory injunction or specific performance, the relief Alpha seeks is the same: delivery of stock. Regardless, Alpha cannot establish

**2.   Effect of the Parties' Agreement to Injunctive Relief**

The parties agreed in the Note that Alpha's breach of its obligations will irreparably harm Alpha, that the remedy at law for any such breach "may be inadequate," and that Alpha shall be entitled to permanent injunctive relief (among other forms of relief).  (Pl. SOF ¶ 10.)  That is not the end of the analysis, however.  As the Court recognized in denying Alpha's motion for a preliminary injunction, this contractual language is not dispositive of the question whether injunctive relief should issue.[13]  (Tr. at 7.)  Rather, it is one factor to be considered along with others.  *EMA Financial*, 2019 WL 689237 at *12 ("the Court, like others, will treat such a provision as persuasive evidence that EMA will suffer from irreparable harm absent an injunction, rather than dispositive evidence"); *Alpha Capital Aktiengesellschaft v. Advanced Viral Research Corp.*, No. 02 Civ. 10237, 2003 WL 328302, at *5 (S.D.N.Y. Feb. 11, 2003) (affording "great weight" to contractual provision stipulating that irreparable harm would result upon breach of conversion obligations).

Notably, the parties did not agree that a remedy at law, such as damages, necessarily would be inadequate as a remedy; rather, they agreed only that it "may be"

---

irreparable harm and the inadequacy of damages that is required for both forms of relief. Like a mandatory injunction, specific performance is an equitable remedy.  And as with injunctive relief, specific performance is only available in the absence of an adequate monetary remedy.  *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 261 (2d Cir. 2012) ("Specific performance may be ordered where no adequate monetary remedy is available and that relief is favored by the balance of equities").

[13] The parties disagree on the degree to which the Court's holdings in its preliminary injunction decision is the "law of the case."  Suffice it to say that the Court is not bound by its conclusions at the preliminary injunction stage, particularly given that a preliminary injunction focuses on the interim time period before trial, and usually is determined on a less developed record.  That said, Alpha has not pointed to any material change in law or fact that is different from what they were at the time of the preliminary injunction hearing.

inadequate.  That formulation necessarily implies that there "may be" scenarios in which a legal remedy will be adequate.  That is precisely the case here.

### 3.  Adequacy of Legal Remedy and Irreparable Harm

In its decision denying a preliminary injunction, the Court reviewed the basic damages principles applicable when considering the proper remedy for a company's failure to honor a conversion notice:

> "It is a fundamental principle that damages for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract."  *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (stating that "New York's damages rule is precisely the same when the breach of contract is non-delivery of shares of stock").

> "Where the breach involves the deprivation of an item," such as stock, "with a determinable market value, the market value at the time of the breach is the measure of damages."  *Sharma v. Skaarup Ship Management Corp.*, 916 F.2d 820, 825 (2d Cir. 1990).

(Tr. at 9.)

This is not the first time a court in this District has had to determine the relief to be granted for failure to honor a stock conversion notice.[14]  The majority of courts that have done so have rejected the notion that monetary damages are not an adequate remedy at law for common stock available on the open market.  As one of those courts explained in denying the plaintiff's request for a permanent injunction: "[U]nder circumstances like these, courts in this District are generally loath to award injunctive relief."  *EMA Financial*,

---

[14] A search of cases within the Second Circuit found at least forty cases of this nature with published decisions, most of them filed within the last several years, although some dating back to the early 2000s.

14

2019 WL 689237 at *13.[15]  *See also Union Capital LLC v. Vape Holdings Inc.*, No 16 Civ. 1343, 2017 WL 1406278, at *6 (S.D.N.Y. March 31, 2017) (finding on summary judgment that damages are readily ascertainable and rejecting request for specific performance and permanent injunctive relief); *LG Capital Funding, LLC v. PositiveID Corp.*, No. 17 CV 1297, 2017 WL 2556991, at *7 (E.D.N.Y. June 9, 2017) (denying preliminary injunction and finding "no surprise that courts routinely refuse to order specific performance in actions like this in which a defendant breaches its obligation to deliver public stock") (internal citations omitted).

Here, damages can be readily determined.  Indeed, both parties agree that the amount is $500,000.  As Alpha explains in asking for damages as an "alternative" to an injunction (in the event the Court does not grant one), "the Court should award damages in the amount of $500,000.  That is the value of the stock Alpha Capital should have, but did not receive, when it converted that portion of the Note."[16]  (Dkt. 31 at 17.) ShiftPixy

---

[15] The *EMA* court cited multiple additional cases to support the same proposition. *See, e.g.*, *Lucente*, 310 F.3d at 262 (denying request to award publicly traded stocks upon plaintiff's successful prosecution of action because there was "no reason why money damages would not adequately compensate [plaintiff] for [defendant's] breach"); *Iroquois Master Fund, Ltd. v. Quantum Fuel System Technologies Worldwide, Inc.*, No. 13 Civ. 3860, 2014 WL 12776748, at *16 (S.D.N.Y. May 23, 2014) ("Where a plaintiff claims that a defendant breached a contract by failing to deliver ... publicly traded stock, money damages can adequately compensate the plaintiff for his loss."); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Company Americas*, 618 F. Supp. 2d 280, 299 (S.D.N.Y. 2009) ("[T]he extraordinary remedy of specific performance is not warranted.... There is no dispute that Aristocrat shares are available in the open market, and the values of those shares on a given date are undisputed."); *cf. Simon v. Electrospace Corp.*, 269 N.E.2d 21, 26 (N.Y. 1971) ("The exceptional instances in which ... specific performance [is] allowed [is] not applicable to this case.... If plaintiff were anxious to own the shares rather than obtain their value, he [i]s free to purchase them in the market.").

[16] As Alpha also notes, the Note provides for interest at a default rate of 18%.  (*Id.*) Elsewhere in its briefing, Alpha argues that damages are not ascertainable because it was deprived of being able to hold the stock in anticipation of a price increase and then

concurs: "Alpha's 'loss sustained' as of June 24, 2019, thus equals the price at which ShiftPixy's shares were then trading less what it actually received, or $0.50 times one million shares less zero, yielding damages of $500,000." (Dkt. 35 at 17.)  *See LG Capital Funding, LLC v. Cardiogenics Holdings, Inc.*, No. 18-1797-CV, 2019 WL 4265964, at *1 (2d Cir. Sept. 10, 2019) (summary order) (awarding damages for failure to deliver common stock in breach of convertible note); *LG Capital Funding, LLC v. 5Barz International, Inc.*, No. 16 CV 2752, 2018 WL 4259979, at *4 (E.D.N.Y. Sept. 6, 2018) ("The parties agree that the market price for defendant's shares on May 9, 2016 was $0.065 per share, and consequently, the 1,699,580 shares to which plaintiff was entitled were worth an aggregate amount of $110,472.70.") (internal fact citations omitted).

To be sure, some courts have granted injunctive relief for non-delivery of convertible stock.  But they have done so in circumstances not applicable here.  Those exceptions typically fall under one of two scenarios:  where the plaintiff can prove that the defendant is insolvent or on the brink of insolvency, or where the plaintiff is deprived of some unique benefit or item that cannot be compensated by damages.[17]

Under the first scenario, "a finding of irreparable harm may lie in connection with an action for money damages where the claim involves an obligation owed by an insolvent or a party on the brink of insolvency." *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 Fed. App'x.

---

capitalize on that increase in value by selling the stock.  The Court rejected this exact argument in denying a preliminary injunction, citing well-established Second Circuit law. (Tr. at 8-10.)

[17] As the following discussion of these scenarios shows, courts sometimes conflate the separate factors of irreparable harm and inadequate remedy of law.  That makes sense as facts establishing inadequacy of damages are often likely to be the same facts underpinning a finding of irreparable harm.

779, 781 (2d Cir. 2010) (summary order) (citing *Brenntag International Chemists, Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999)). In order to utilize this exception to the general rule that a monetary injury does not constitute irreparable harm, however, "a movant must show that the risk of insolvency is likely and imminent." *Id.* (citing *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)); *see, e.g., Castle Creek Tech. Partners, LLC v. CellPoint, Inc.,* No. 02 CV 6662, 2002 WL 31958696, at *3 (S.D.N.Y. Dec. 9, 2002) (finding irreparable harm on motion for preliminary injunction where plaintiff "provided ample and specific evidence that CellPoint is at the brink of insolvency").

Alpha has not proven indisputably on summary judgment that ShiftPixy is insolvent or on the brink of insolvency.  To the contrary, at the preliminary injunction stage, the Court found that despite assorted negative financial metrics, ShiftPixy's business appeared to be improving and the prospect of insolvency was speculative.  (Tr. at 10-13.) As ShiftPixy points out on the instant motion, nothing has materially changed in that regard, and Alpha has not submitted any evidence to the contrary.

The second scenario under which mandatory injunctive relief has been granted is when the stock at issue is not available on the open market, or when breach creates a singular harm such as depriving the plaintiff of control of the company issuing the stock. *See, e.g., Oracle Real Estate Holdings I LLC v. Adrian Holdings Company I LLC*, No. 08-CV-7882, 582 F. Supp.2d 616, 625 (S.D.N.Y. 2008) (finding irreparable harm where breach of investment contract deprived plaintiff of gaining control of the defendant); *Laurus Master Fund, Ltd. v. Versacom International, Inc.*, No. 02 Civ. 5340, 2003 WL 21219791, at *4 (S.D.N.Y. May 21, 2003) (finding no adequate remedy at law "[b]ecause

17

there are insufficient outstanding shares for Laurus to purchase all of the shares owing to it under the financing agreements on the open market, Laurus cannot obtain the interest in the company for which it contracted by purchasing the shares on the open market. In light of these circumstances, Laurus has no adequate remedy at law.").  Alpha has not demonstrated that it could not have purchased shares of ShiftPixy stock on the open market or that it has been deprived of some other unique benefit that cannot be compensated with monetary damages.

Alpha makes much of a group of cases from this District in which Alpha itself successfully obtained preliminary injunctive relief requiring delivery of shares that defendants failed to deliver upon notice of conversion. In each of those cases, however, the court found that Alpha had sufficiently demonstrated that the defendant likely would not be able to satisfy a judgment.  *See Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*, No. 11 Civ. 6458, 2011 U.S. Dist. LEXIS 157297, at *6 (S.D.N.Y. Oct. 14, 2011) (granting preliminary injunction in part because of risk that defendant would not be able to satisfy a money judgment); *Alpha Capital Anstalt v. Advanced Cell Technology, Inc.*, No. 09 Civ. 670 (S.D.N.Y. Feb. 10, 2009) (Ex. C to Pl. Mem.) at 13 (granting preliminary injunction where defendant was on verge of bankruptcy and there were no assets on which to collect); *Alpha Capital Aktiengesellschaft*, 2003 WL 328302, at *5 (granting preliminary injunction because Alpha sufficiently demonstrated "substantial likelihood" that the defendant would not be able to satisfy a judgment); *Alpha Capital Aktiengewsellschaft v. Group Management Corp.*, No. 02 Civ. 2219, 2002 WL 3168798, at *3 (S.D.N.Y. Nov. 25, 2002) (granting preliminary injunction based in part on concern that plaintiff may not have access to any damages it is entitled to recover due to the

defendant's "precarious financial position" and defendant's failure to post bond contractually required upon failure to honor conversion request). As explained above, Alpha has not sufficiently demonstrated a similar risk here.

Lastly, Alpha contends that because ShiftPixy has declared its intention not to honor future conversion notices, Alpha faces the prospect of having to engage in repeated litigation each time it submits a notice and Alpha defaults. (Dkt. 31 at 13-14; Dkt 33 at 7.) Alpha cites cases, from outside this Circuit, in which the court held that "injury is irreparable and there is no adequate remedy at law [if] a multiplicity of suits would be required to gain relief." *Texas Guaranteed Student Loan Corp. v. Community Check, LLC*, No. SA-13-CV-00390, 2013 WL 4400885, at *5 (W.D. Tex. Aug. 14, 2013) (brackets in original); *Texas Guaranteed Student Loan Corp. v. Arrangements, Inc.*, No. 3:07-CV-438, 2009 WL 1919553, at *3 (N.D. Tex. July 2, 2009) (same). Each of these cases is distinguishable. For example, the two Texas cases both involved the enforcement of student loans in which there necessarily would be an invoice and failure to pay every month resulting in the prospect of "dozens" of lawsuits.[18] Here, although ShiftPixy has

---

[18] *Texas Guaranteed*, 2013 WL 4400885 at *5; *Texas Guaranteed*, 2009 WL 1919553 at *3. The two additional cases cited by Alpha are even farther afield. *See Signature Flight Support Corp. v. Landow Aviation Limited Partnership*, 442 Fed. App'x 785 (4th Cir. 2011) (contract dispute between airport concession service providers in which the court found irreparable harm because defendant's injury consisted of lost customers and good will); *Securities and Exchange Commission v. Manor Nursing Centers*, 458 F.2d 1082 (2d Cir. 1982) (SEC regulatory enforcement action affirming the district court's exercise of its discretion to grant permanent injunctive relief prohibiting the defendants from violating the securities laws).

stated that it will not honor future conversion requests, and although a substantial part of the Note remains outstanding, the prospect of future lawsuits is far more speculative.[19]

In sum, Alpha has not demonstrated that monetary damages are inadequate to remedy ShiftPixy's breach or that it will suffer irreparable harm in the absence of injunctive relief. This is fatal to its bid for permanent injunctive relief.[20]

### 4. Balance of Hardships

Neither party has presented much, if any, evidence of hardship in the event a permanent injunction is or is not issued. Alpha argues that it bears all the hardships without an injunction because it "does not have the stock, and its attendant stockholder rights and right to remain as a shareholder." (Dkt. 31 at 16-17.) That argument is not persuasive. Alpha has not demonstrated any interest in remaining a shareholder (as opposed to selling the shares on the open market); nor has it presented evidence that it cannot purchase shares on the open market. Alpha also has said that without delivery of the ShiftPixy stock, Alpha would have to invest more of its own money to participate in an increase in ShiftPixy's stock price rather than being able to obtain shares by paying down the Note. (Dkt. 31 at 12.) Alpha has not identified, however, any hardship that would impose.[21]

---

[19] That said, the Court agrees that imposing a remedy that fosters more, not less, litigation is inefficient and undesirable.

[20] Alpha argues that irreparable injury is an independent consideration in the context of a preliminary injunction, but not a permanent injunction (Dkt. 31 at 7), and that equitable relief should be granted because it "is the superior remedy" (Dkt. 33 at 5). Both statements are at odds with the requirements for a permanent injunction enumerated by the Supreme Court in *eBay*. 547 U.S. at 391.

[21] Alpha also makes the point about having to invest more funds to obtain shares on the open market as an additional reason that damages are an inadequate remedy. Again,

For its part, ShiftPixy has not presented evidence of what hardship, if any, it would suffer in the event it was required to deliver the stock shares to Alpha.  Accordingly, the Court finds that the balance of hardships does not tilt one way or the other at this juncture and remains a disputed issue of fact.  But even if the balance tipped toward Alpha, it would not overcome Alpha's failure to prove the necessary elements of irreparable harm and the inadequacy of damages.

### 5. Public Interest

Alpha contends that requiring ShiftPixy to comply with its obligations under the Note by delivering the requisite stock best serves the public interest.  According to Alpha:

> Issuing convertible securities enables public companies which are in very weak financial circumstances, such as ShiftPixy, to obtain needed financing on the basis of the market for their stock.  The carrot, from the investors perspective, is its ability to recoup and profit on its investment without relying on the ability of the company issuing the securities to repay the investment.  If courts will not enforce the contractual obligation to deliver stock, then the entire structure of the convertible securities market will be undermined.

(Dkt. 31 at 13.)  That argument, if sound, has some appeal.  This Court, however, has no basis to evaluate the various premises of the argument, including what will or will not sustain the convertible securities market.  Alpha has not provided any evidence on summary judgment to support its public interest argument.  One would think that if the consequences were as dire as Alpha suggests, it would have been able to present some indication that the convertible securities market has already shown the effects of the many

---

however, Alpha has not explained or presented evidence as to why that is so. For example, it has not offered any evidence that the additional funds would otherwise yield a better return if invested elsewhere.

cases in the last few years that have found money damages to be an adequate remedy for failure to deliver converted stock.

By the same token, the Court has no evidence before it to suggest that the public interest is better served *without* injunctive relief. ShiftPixy has not addressed the issue. Whether the public interest is best served by an injunction remains unresolved. As with the balance of hardships, however, this issue does not diminish the adequacy of monetary damages or cure the absence of irreparable harm.

### 6. Sanctity of Contract

A theme running throughout Alpha's summary judgment briefing is that awarding damages without awarding injunctive relief deprives Alpha of the benefit of its bargain. Alpha bargained for the benefit of not having to invest additional funds to obtain ShiftPixy stock. Alpha bargained for protection against the risk of investing in an unproven company that may not be able to pay a damages award. Alpha bargained for the right to exercise its rights as a shareholder while it owned the stock. Alpha bargained for agreement that a breach by ShiftPixy necessarily will cause irreparable harm and entitle Alpha to injunctive relief.

Alpha is not alone in expressing a concern for ensuring parties receive the benefit of their bargain. In one of the cases from this District cited by Alpha in which the court granted a preliminary injunction requiring the defendant to honor a conversion notice, the Court characterized the plaintiff's right to conversion as "absolute" and "unconditional." *Longview Special Finance v. Infinium Labs, Inc.*, No. 06 Civ. 1772 (S.D.N.Y. Nov. 29,

2006) (Ex. A to Pl. Mem.) at 19.[22]   The court went on to opine that "[c]ompelling compliance rather than simply awarding damages reinforces the sanctity of bargains between corporations and creditors and investors and is consistent with the debenture holders' potential exercise of their rights as equity shareholders." [23]   *Id.* at 21; *see also Alpha Capital Anstelt v. Advanced Cell*, 2011 U.S. Dist. LEXIS 157297 at *7 (quoting and applying *Longview*).

This Court shares that sentiment.  But as the Second Circuit has cautioned, not all bargained-for contractual provisions provide a basis for injunctive relief, since a rule to this effect "would eviscerate the essential distinction between compensable and non-compensable harm." *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 114 (2d Cir. 2003); *see also, e.g., EMA*, 2019 WL 689237 at *13 ("EMA contends that it will lose its bargained-for rights under the terms of the agreements absent a permanent injunction, resulting in irreparable harm. The Court disagrees. EMA contracted for the right to obtain AIM-Inc. shares—i.e., to obtain equity in AIM-Inc.—in lieu of

---

[22] In *Longview*, the court granted the preliminary injunction in part because the defendant "is insolvent and likely could not pay monetary damages."  *Id.* at 21.  The case is thus distinguishable from the present case for the same reason as other cases cited by *Alpha.* Indeed, *Longview* relied on the 2002 and 2003 cases discussed earlier in which *Alpha* obtained preliminary injunctive relief based in part on the financial status of the defendants.

[23] Alpha also relies on Delaware authority ordering specific performance of a stock conversion agreement *Halifax Fund, L.P. v. Response U.S.A., Inc.*, No. CIV.A. 15553, 1977 WL 33173241, at *3 (Del. Ch. May 13, 1997) (rejecting damages as adequate remedy and holding that "only coercive relief will vindicate the rights being enforced"); *SFTP Investments L.L.C. v. Ariad Pharmaceuticals,* 752 A.2d 115, 125 (Del. Ch. 1999) (citing *Halifax* favorably).  Whatever merit *Halifax* may have, it does not supplant the law within the Second Circuit.

monetary repayment. But here, EMA has not alleged that such shares are unavailable on the open market, and the value of such shares on a given date will likely be undisputed.").

Alpha's argument boils down to its contention that monetary damages truly are not adequate to remedy ShiftPixy's breach.  As explained above, however, Alpha has not proven that.  Having failed to establish the requisite elements for a permanent injunction, Alpha's motion for summary judgment awarding a permanent injunction should be denied.

## C.    Alpha is Entitled to Summary Judgment on ShiftPixy's Counterclaim

Summary judgment should be granted in favor of Alpha on ShiftPixy's counterclaim because ShiftPixy has abandoned the claim. In opposition to the instant motion, ShiftPixy represented that it intends to withdraw its counterclaim and the Court therefore "need not reach that part of the motion."  (Defendant's Memorandum of Law in Opposition, Dkt. 35 ("Def. Mem.") at 1.)   Repeating its intent to withdraw its counterclaim, ShiftPixy purposefully did not respond to Alpha's statement of undisputed material facts concerning the counterclaim.  (*See* Def. 56.1 ¶ 28.)

As of the date of this Report and Recommendation, however, no filing with the Court indicates that ShiftPixy has actually withdrawn its counterclaim.  Having failed to respond in any substantive way to defend its counterclaim, summary judgment should be granted in Alpha's favor.

## Conclusion

For the foregoing reasons, I recommend that Alpha's motion for summary judgment be GRANTED IN PART and DENIED IN PART.  Alpha is entitled to summary judgment of liability against ShiftPixy on its claims for breach of contract and anticipatory repudiation, damages in the amount of $500,000 plus 18% contractual interest, and

summary judgment dismissing ShiftPixy's counterclaim. The motion should be denied in all other respects. To the extent not discussed herein, the Court has considered the parties' remaining arguments and finds them to be without merit.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Paul G. Gardephe, U.S.D.J., United States Courthouse, 40 Foley Square, New York, NY 10007 and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. **Failure to file timely objections will preclude appellate review.**

Respectfully submitted,

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:      November 22, 2019
            New York, New York

Copies transmitted to all counsel of record.