UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
ALPHA CAPITAL ANSTALT,                         :
                                                :
                                                :
                                                :
                             Plaintiff,         :
                                                :
                                                :
            - against -                         :
                                                :
                                                :
SHIFTPIXY, INC.,                                :
                                                :
                                                :
                             Defendant.         :
--------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___3/23/2020___

19 Civ. 6199 (PGG) (RWL)

**DECISION AND ORDER:**
**ATTORNEYS' FEES**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Alpha Capital Anstalt ("Alpha") successfully obtained summary judgment against Defendant ShiftPixy, Inc. ("ShiftPixy") and received a damages award of $500,000 (plus interest). The parties' contract entitles Alpha to recover attorneys' fees in connection with enforcing its rights under the contract. Alpha now moves for an award of fees and expenses in the amount of $95,486.45. ShiftPixy opposes. ShiftPixy contends that the litigation primarily focused on Alpha's unsuccessful attempt to obtain injunctive relief, and therefore Alpha should only recover fees associated with its damages claim. For the following reasons, Alpha's motion is GRANTED.

## Factual and Procedural Background[1]

For purposes of this motion, the facts and procedural background are straight-forward.  In March 2019, Alpha purchased from ShiftPixy a senior convertible note with a principal amount of $310,000 (Dkt. 4-1) (the "Note").  The Note furnished Alpha with the right, at its option, to convert the Note's principal amount into one million shares of ShiftPixy stock.

Pursuant to the Note, ShiftPixy's failure to honor Alpha's conversion request is a default. (Note ¶¶ 9-10.)  ShiftPixy acknowledges in the Note that a breach of its obligations "will cause irreparable harm to [Alpha]," "that the remedy at law for any such breach may be inadequate," and that "in addition to all other available remedies," Alpha shall be entitled "to specific performance and/or temporary, preliminary and permanent injunctive or other . . . relief." (*Id*. ¶ 10.)  Additionally, the Note expressly provides for Alpha's recovery of attorneys' fees in the event that the "Note is placed in the hands of an attorney for collection or enforcement or is collected or enforced through any legal proceeding or [Alpha] otherwise takes action to collect amounts due under this Note or to enforce provisions of this Note."  (*Id. ¶* 19.)

Alpha submitted a request for conversion on June 20, 2019.  Although ShiftPixy had honored earlier conversion requests by Alpha, it did not honor this one.   On June

---

[1] A more detailed rendition of facts and background can be found in earlier decisions from this case.  *See* Dkt. 12 (denying Alpha's motion for preliminary injunction); *Alpha Capital Anstalt v. Shiftpixy, Inc.*, No. 19 Civ. 6199, 2020 WL 104697 (S.D.N.Y. Jan. 9, 2020) (adopting Report and Recommendation granting Alpha summary judgment but not mandatory permanent relief) (Dkt. 45.)

27, 2019, facing financial difficulties, ShiftPixy publicly announced that it would voluntarily default and cease honoring conversion requests on 2018 and 2019 convertible notes.

On July 3, 2019, Alpha filed this action seeking to enforce its rights under the Note. Alpha also moved for a preliminary injunction requiring ShiftPixy to (1) immediately deliver one million shares of ShiftPixy common stock, and (2) honor all future conversion notices duly submitted according to the terms of the Note. The Honorable Paul G. Gardephe, U.S.D.J. denied the motion. (Dkt. 12.) Although the Court determined that "it seems clear" that ShiftPixy breached its obligations under the Note, the Court found that Alpha's claim of irreparable harm was speculative and insufficient to warrant a preliminary injunction. (Transcript July 24, 2019, Dkt. 21 ("Tr.") at 13-14.)

With respect to irreparable harm, the Court first held that the parties' contractual agreement that ShiftPixy's breach of the Note will cause irreparable harm was insufficient alone, and instead merely one factor to consider, in assessing irreparable harm. (*Id.* at 7-8.) The Court then rejected Alpha's argument that it had no adequate remedy at law because its damages would be hard to prove. The Court cited Second Circuit precedent holding that "[w]here the breach involves the deprivation of an item, such as a stock, with a determinable market value, the market value at the time of breach is the measure of damages." (*Id.* at 9) (quoting *Sharma v. Skaarup Ship Management Corp.*, 916 F.2d 820, 825 (2d Cir. 1990)). The Court also rejected Alpha's argument that it faced imminent irreparable harm because ShiftPixy's financial condition was such that the company was likely to soon be insolvent and therefore unable to pay any damages award. The Court explained that "numerous courts in this Circuit" have held that evidence similar to that presented by Alpha is "insufficient to demonstrate that a defendant is currently or

imminently insolvent." (*Id.* at 11.) The Court also noted that ShiftPixy's SEC filings from earlier in the year indicated that its business was improving. (*Id.* at 12.)

On July 30, 2019, Alpha filed an Amended Complaint adding damages as an alternative form of relief to injunctive relief. (Dkt. 14.)  A few months later, on October 4, 2019, Alpha moved for summary judgment. The motion focused primarily on whether the Court should grant permanent injunctive relief directing ShiftPixy to immediately deliver one million shares of stock pursuant to Alpha's conversion request and honor all future conversion requests, or instead award damages in the amount of $500,000 (plus interest), being the value of the one million shares on the day they should have been delivered.

On November 22, 2019, the undersigned issued a Report and Recommendation to grant summary judgment for Alpha, award Alpha damages of $500,000 (plus interest), and deny Alpha's request for injunctive relief mandating that ShiftPixy deliver shares of its stock to Alpha.  (Dkt. 41.)  This Court determined that the facts had not changed materially since the motion for preliminary injunction was denied, and damages provided Alpha with an adequate remedy at law.  Judge Gardephe adopted the Report and Recommendation in full and granted summary judgment.  (Dkt. 45.)

On January 21, 2020, Alpha filed the instant Motion for Attorneys' Fees (Dkt. 47) (the "Motion"). The Motion includes the Affirmation of Kenneth A. Zitter in Support, attaching Exhibits A-C (Dkt. 47) ("Zitter Aff.") as well as a Memorandum of Law in Support ("Pl. Mem.") (Dkt. 48.) On February 12, 2020, ShiftPixy filed a Memorandum of Law in Opposition ("Def. Mem.") (Dkt. 52.)  Alpha filed a Reply Memorandum of Law on March 6, 2020 ("Pl. Reply Mem.") (Dkt. 55.)  Judge Gardephe referred the determination of this non-dispositive motion to the undersigned. (Dkt. 49.)

**Legal Standards**

The Note is governed by New York law.  (Note ¶ 26.)  Even though the Note provides for recovery of attorneys' fees without qualification, New York law imposes a reasonability requirement. Where "a contract provides for shifting of the actual attorney's fees expended by the prevailing party, 'the court will order the losing party to pay whatever amounts have been expended . . . so long as those amounts are not unreasonable.'" *Wells Fargo Bank Northwest, N.A. v. Taca International Airlines, S.A.*, 315 F. Supp.2d 347, 353 (S.D.N.Y. 2003) (quoting *F. H. Krear Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987)); *see also Union Central Life Insurance Company v. Berger*, No. 10 Civ. 8408, 2013 WL 6571079, *2  (S.D.N.Y. Dec. 13, 2013) (PGG), aff'd 612 Fed. Appx. 47 (2d Cir. 2015) (fees awarded "pursuant to contractual fee-shifting provision must be reasonably related to the fee arrangement that the prevailing party would have made with counsel absent a fee-shifting agreement") (internal citation omitted).  As the Second Circuit has explained, "[b]ecause a fee-shifting clause can produce perverse incentives for a litigant (and his attorneys) . . .  courts must scrutinize fee requests to ascertain whether they are reasonable." *Diamond D Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992) (internal citation omitted).

"When determining a fee award based upon a contractual attorneys' fees agreement between the parties . . . courts have 'broad discretion' and need not follow a specific formula." *Clarendon National Insurance Co. v. Advance Underwriting Managers Agency, Inc.*, No. 06 Civ. 15361, 2011 WL 6153691, at *2 (S.D.N.Y. Dec. 8, 2011) (quoting *U.S. Fidelity & Guaranty Co. v. Braspetro Oil Services Co.*, 369 F.3d 34, 74 (2d Cir. 2004)). "Both the evaluation of reasonable attorneys' fees and the reduction of such

fees lies within the sound discretion of the Court." *Union Central Life Insurance Company*, 2013 WL 6571079 at *2 (internal quotations and citations omitted).

The analysis of what is a reasonable fee begins with a court's determination of a "presumptively reasonable fee." *Sandoval v. Materia Brothers Inc.*, No. 11 Civ. 4250, 2013 WL 1767748, at *3 (S.D.N.Y. March 5, 2013) (quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 189 (2d Cir. 2008)). That amount is calculated using the "lodestar" method in which the "reasonable number of hours required by the case" is multiplied by a reasonable hourly rate. *Millea v. Metro– North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *accord Sandoval*, 2013 WL 1767748, at *3. Determining what constitutes a reasonable hourly rate involves "a case-specific inquiry into the prevailing market rates for counsel." *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005). As for the number of hours, a court has discretion to impose across-the-board reductions, if warranted, "as a practical means of trimming fat from a fee application." *Francois v. Mazer*, 523 F. App'x 28, 29 (2d Cir. 2013) (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir.1998)).

The burden of establishing that the requested hourly rates and number of hours worked are reasonable falls on the fee applicant. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008). But "particularly in determining contractual attorneys' fees," as here, "'there is a strong presumption that the lodestar figure . . . represents the 'reasonable' fee' and the party advocating a reduction in the amount 'bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee.'" *Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Finance Corp.*, No. 04 Civ. 3854, 2008 WL 4833025, at *2 (Nov.

3, 2008) (quoting *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992) (internal quotations and citations omitted)).

**Discussion**

The rates charged and time expended by Plaintiff's counsel are eminently reasonable. Plaintiff's attorney, Kenneth Zitter, graduated from Harvard Law School and is a veteran commercial litigator with longtime experience representing Fortune 500 companies. (Zitter Aff. ¶¶ 9-10.) He has represented Alpha for more than 20 years. (*Id.* ¶ 7.) His hourly rate is $700, which is fair and reasonable given the issues at play in this litigation, and it is in line with rates charged by others in this District in similar types of disputes. (*Id.* ¶ 10.) Mr. Zitter's research associate, Lisa Hershman, also a Harvard Law School graduate, has 17 years of legal experience. (*Id.* ¶ 11.) Her hourly rate is $350 an hour. (*Id.*) The Court finds that her rate is also fair and reasonable. Indeed, ShiftPixy nowhere challenges the rates charged by Plaintiff's counsel.

Mr. Zitter personally handled most of the work for the case – drafting pleadings, motions and briefs, appearing in court, and consulting with his client. He logged 52.25 hours in connection with commencement of the case through preliminary injunction, and 67 hours in connection with proceedings thereafter, including summary judgment. (Zitter Aff. Exs. B and C.) Ms. Hershman billed a total of 17.82 hours. The entirety of work was performed by only those two attorneys. This Court has reviewed the billing records, which demonstrate that Plaintiff's counsel litigated the case efficiently. There are no indicia of duplicative efforts, "fluff," or gratuitous charges. And, as with Plaintiff counsel's rates, ShiftPixy has not challenged the reasonableness of the time charged.

Rather, the sole basis on which ShiftPixy disputes Alpha's fee claim is Alpha's limited success in obtaining its desired outcome in this litigation. ShiftPixy argues that most of Alpha's efforts were dedicated to seeking injunctive relief, both at the preliminary injunction stage and on summary judgment. Having failed to obtain the primary relief it sought at both junctures, Shift Pixy contends, Alpha should not recover most of its fees. (*See* Def. Mem. at 10-13.) As ShiftPixy sees it, a reasonable client would not pay for work that proved unsuccessful, and that it was not reasonable for Alpha or its counsel to expect to succeed. More bluntly, "an objective client, advised by competent counsel who had done even a modicum of research into New York law regarding the availability and adequacy of money damages for breach of a contract to deliver stock, would be unlikely to have authorized a meritless motion for a preliminary injunction in the first instance, and surely would not have continued to press for a permanent injunction in the second instance by its summary judgment motion." (*Id*. at 10.)

ShiftPixy doth protest too much.[2] It is true that both Judge Gardephe and the undersigned rejected Alpha's arguments in support of its quest for injunctive relief. But Alpha succeeded on its liability claim and was awarded $500,000 in damages, plus interest. Even ShiftPixy recognizes that this was a substantial victory inasmuch "[t]he judgment entered in favor of Alpha by the district court . . . yielded it a return of almost 100% on [Alpha's] principal investment." (Def. Mem. at 2 n.3.)

---

[2] The theatrical line "The lady doth protest too much, methinks" is spoken by Queen Gertrude in William Shakespeare's *Hamlet*. Queen Gertrude delivers the line in response to the insincere overacting of a character in the play within a play created by Prince Hamlet to prove his uncle's guilt in the murder of his father. WILLIAM SHAKESPEARE, HAMLET, act 3, sc. 2.

Moreover, Alpha previously has had success in obtaining injunctive relief in stock conversion cases by demonstrating irreparable harm based on the defaulting defendant's precarious financial position and consequent high risk that it would not be able to satisfy a money judgment. *See, e.g., Alpha Capital Anstalt v. Advanced Cell Technology, Inc.,* No. 11 Civ. 6458, 2011 WL 13371851, at *1 (S.D.N.Y. Oct. 14, 2011). Here, however, both Judge Gardephe and the undersigned found that Alpha had not carried its burden because although ShiftPixy's liabilities "dwarfed" its assets, the company's financial condition was improving. (*See* Dkt. 21 at 10-13 (preliminary injunction ruling); Dkt. 41 at 18-19 (Report and Recommendation).) But that distinction is a matter of degree and does not warrant withholding attorneys' fees. Neither "competent counsel" nor an objective client in Alpha's position would have been unreasonable in pursuing injunctive relief successfully obtained in the past, even if the instant case was a closer one.

ShiftPixy's "limited success" argument also is legally deficient under the terms of the parties' own agreement. The Note's attorneys' fees provision nowhere references degree of success or results obtained in enforcing Alpha's rights under the Note. (See Note ¶ 19.) ShiftyPixy cites no case or other authority to support the proposition that Alpha's failure to obtain injunctive relief merits a downward departure from the lodestar figure under such circumstances. Instead, in a footnote, ShiftPixy invokes *Hensley v. Eckerhart*, 461 U.S. 242 (1983), a case addressing calculation of attorneys' fees awarded under federal civil rights statutory law, for the proposition that "the most critical factor is the degree of success obtained." (Def. Mem. at 9 n.11 (quoting 461 U.S. at 436).) As ShiftPixy concedes, however, *Hensley* is "not precisely on point to contractual fee-shifting cases" because it involves fee shifting under federal statutes. (*Id.*) This is a significant

distinction, as Alpha aptly explains: unlike contractual fee-shifting cases, "in cases in which legal fees may be recoverable by statute, such as an action to enforce civil rights, there is generally no plaintiff who has actually paid any legal fees and the plaintiff's attorney is looking to the defendant as the sole source for obtaining legal fees." (Pl. Reply at 5 n.4.)

In any event, "hours spent on . . . unsuccessful claims need not be excluded from the lodestar amount" as "long as the plaintiff's unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (quoting *Grant*, 973 F.2d at 101). It is thus not uncommon for courts to decline to exclude fees associated with claims or relief on which the plaintiff did not succeed, even in civil rights case. *See, e.g., Lunday*, 42 F.3d at 134-35 (court was "not required to adjust lodestar to reflect the failure to succeed across the board" where jury returned verdict against plaintiff on several claims and several defendants and awarded him modest monetary damages on one claim against a single defendant); *Grant*, 973 F.2d at 101 (district court did not abuse discretion in not deducting hours for limited success even though plaintiff received a low settlement and failed to obtain injunctive relief). Here, all claims and relief sought by Alpha stemmed from the same set of facts and are closely interrelated.

In short, Alpha is entitled to its total feel request. To the extent not discussed above, the Court has considered all other arguments advanced by ShiftPixy and finds them to be without merit.

## Conclusion

For the foregoing reasons, Alpha's motion is GRANTED in full, and Alpha is awarded fees and expenses in the total amount of $95,486.45, consisting of $94,712.00 in fees[3] and $774.45 in expenses.[4]

SO ORDERED.

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:          March 23, 2020
                New York, New York

Copies transmitted to all counsel of record.

---

[3]  Of the total fee amount, $5,000 is Plaintiff counsel's estimate of the fees incurred in connection with the instant Motion. (Zitter Aff. ¶ 6.)  That amounts to just a bit more than seven hours of time for Mr. Zitter to prepare his moving affirmation and brief, as well as his reply.  The Court finds this time and the estimated fee for the attorneys' fees motion to be quite reasonable, particularly given ShiftPixy's opposition. ShiftPixy has not suggested otherwise.

[4] ShiftPixy contends that Alpha should be denied recovery of these modest expenses because Plaintiff's counsel has not provided proper proof of them.  (Def. Mem. at 16.) The Court disagrees.  Mr. Zitter's Affirmation attests to the bills submitted to and paid by his client.  Exhibit B and C to his Affirmation identify expenses attributed to "filing fees, copies, etc."   While better practice would be to provide more specific information, counsel's affirmation that the expended amounts are genuine is sufficient in this instance.